NEWELL ET AL., RESPONDENTS, v. MEYENDORFF, APPELLANT.

PUBLIC POLICY — *Contract in restraint of trade.* — Plaintiffs and defendant entered into a contract in which plaintiffs agreed that defendant was to have the sole and exclusive right of selling and dealing in a certain brand of cigars in Montana; that plaintiffs would not sell said cigars to any one else in Montana upon the consideration that defendant would cease advertising and selling other brands of cigars from which he was deriving profit, and that he would purchase said brand of cigars from plaintiffs, and would introduce and promote the sale thereof. *Held,* that the contract was not general, but was limited to place and person; that it did not deprive the public of the restricted party's industry, but was simply a contract for the enlistment of defendant's services as an agent, and was therefore not void as a contract in restraint of trade.

ESTOPPEL — *Party bound by the rulings of the court, which he obtains upon his own motion.* — In the case at bar, in an action brought by the plaintiffs for the purpose of recovering the price of certain cigars, defendant sought to recoup damages sustained to his business by a breach of the contract on the part of the plaintiffs. The court sustained a demurrer to the answer upon the ground that the contract was void as against public policy, being in restraint of trade. Defendant accepted the ruling, and amending his answer, pleaded the same contract as an absolute defense. Upon a trial the court found as a conclusion of law that the contract was not void, and rendered judgment for plaintiffs. *Held,* that plaintiffs having procured a ruling of the court that the contract was void, were bound by their theory of the case, and were estopped from receiving the benefit of the subsequent ruling to the effect that the contract was valid. *Held, also,* that the latter ruling of the court in construing the contract was correct; but when considered with the former ruling upon the demurrer, it deprived the defendant of a substantial right.

APPEAL — *Matters dehors the record.* — *Held,* that on an appeal this court is not precluded from examining the original answer and the sustaining of the demurrer thereto, for the purpose of ascertaining whether the court below in such decision, together with his subsequent reversal of his ruling in the same case, did not deprive the defendant of a substantial right, and exclude him from his day in court.

*Appeal from First Judicial District, Lewis and Clarke County.*

The case was tried before McCONNELL, C. J., without a jury.

*J. B. Clayberg,* for Appellant.

Plaintiffs were estopped from taking the position that the contract was valid after having procured the decision of the court that it was void. The rule is well settled that a party is not permitted to take inconsistent positions in court in the same suit. (*Smith* v. *Babcock,* 3 Sum. 584; *Ohio etc. Ry. Co.* v. *McCarthy,* 96 U. S. 258; *Philadelphia etc. Ry. Co.* v. *Howard,* 13 How. 307; *Avedando* v. *Gay,* 8 Wall. 376; *Bushnell* v. *Kennedy,* 9

Wall. 387; *Irwin* v. *Miller*, 23 Ill. 401; *Braidwood* v. *Weiller*, 89 Ill. 606; *Belanger* v. *Hersey*, 90 Ill. 70; *Glover* v. *Benjamin*, 73 Ill. 42; *Hemphill* v. *Holly*, 4 Minn. 233; *Sweezey* v. *Stetson*, 67 Iowa, 481; *McQueen* v. *Gamble*, 33 Mich. 344; *Bean* v. *Macomber*, 35 Mich. 455; Bigelow on Estoppel, 601; 1 Herman on Estoppel, § 822.) Had the court power at a subsequent term to change its ruling upon this proposition, thereby depriving defendant of his defense of recoupment? The ruling of the court was the law of the case upon the point, until such ruling was reversed by a higher court. (*Kemper* v. *Town of Waverly*, 81 Ill. 278; Freeman on Judgments, §§ 15–23; *Exchange Bank* v. *Ford*, 7 Colo. 314; *Williams* v. *Hayes*, 68 Wis. 248; *Territory* v. *Christensen*, Dak. Jan. 31, 1887, 31 N. W. Rep. 847, and note; *Schobacher* v. *Germantown F. M. I. Co.* 59 Wis. 86; *Selz* v. *First Nat. Bank*, 60 Wis. 246; *Newman* v. *Newlon*, 14 Fed. Rep. 634; *Breed* v. *Ketchum*, 51 Wis. 164; *Bank of U. S.* v. *Moss*, 6 How. 31; *Jackson* v. *Ashton*, 10 Peters, 480; *Washington Bridge Co.* v. *Stewart*, 3 How. 413; *Cameron* v. *McRoberts*, 3 Wheat. 591; *Latimer* v. *Morrain*, 43 Wis. 107; *Wise* v. *Frey*, 9 Neb. 217; *Hansen* v. *Berquest*, 9 Neb. 269.) The court found as facts that the contract existed as claimed by defendant, and that the goods were purchased thereunder. If this contract was void as being contrary to public policy, and the goods were purchased under it, no recovery can be had upon it. There seems in the law to be two kinds of contracts which are void, and they are divided into two general classes, viz., contracts *malum in se* and contracts *malum prohibitum*, and there seems to be a wide distinction as to the rights of the parties under these two classes of contracts. In the first class of contracts, or those called *malum in se*, the parties are always considered in *in pari delicto* and *particeps criminis*, while in the contracts which are merely prohibited, no wrong is intended by either party, and there is no such thing as *particeps criminis*. In the first class of cases, the court has universally refused to aid the parties, but always leaves them where it finds them. In the second class of cases, the court will sometimes aid the parties; for example, the Statute of Frauds provide that all contracts which cannot be performed within one year shall be void. But as to contracts *malum in se*, Mr. Chief Justice Wilmot, in the case of *Collins* v.

*Blantern,* 2 Wils. 341, states the principle so clearly that it has been followed ever since. He says: "You shall not stipulate for iniquity. All writers upon our law agree in this. No polluted hand shall touch the pure fountain of justice. Whoever is a party to an unlawful contract, if he hath once paid the money stipulated to be paid in pursuance thereof, he shall not have help of a court to fetch it back again; you shall have no right of action when you come into a court of justice in this unclean manner."

The principles thus initiated by Mr. Chief Justice Wilmot have been followed from that day down to the present time, and while the rule may be stated in different ways by different judges, yet this is the substance of the entire principle. Out of it grew the maxim, *Ex turpi causa non oritur actio, et in pari delicto potior conditio defendentis.* (*Roll* v. *Raquet,* 4 Ohio, 400; *Miller* v. *Larson,* 19 Wis. 486; *Jerome* v. *Bigelow,* 66 Ill. 452; *Foster* v. *Thurston,* 11 Cush. 322; *Martin* v. *Wade,* 37 Cal. 168; *Knowlton* v. *Congress etc. Springs Co.* 57 N. Y. 518; *St. Louis etc. R. R.* v. *Mathers,* 71 Ill. 592; *King* v. *Brown,* 2 Hill, 485; *Peck* v. *Burr,* 10 N. Y. 294; *Saratoga Bank* v. *King,* 44 N. Y. 87; *Arnott* v. *Pittston Coal Co.* 68 N. Y. 558; *Gregg* v. *Wyman,* 4 Cush. 322; *Way* v. *Foster,* 1 Allen, 408; *King* v. *Green,* 6 Allen, 139; *Wight* v. *Rendskopf,* 43 Wis. 344; *Clarke* v. *Lincoln Lumber Co.* 59 Wis. 655.) The judgment must be reversed, even though this court should conclude that the last ruling of the court was correct on the validity of the contract, and that he had a right to change such ruling, for the reason that by such ruling defendant was deprived of a substantial right. If the contract was valid and the goods had been purchased under it, in an action for the value of the goods, defendant, under our statute, was entitled to recoup damages for a breach of the contract on the part of plaintiff. By the sustaining of the first demurrer and declaring the contract void, defendant was deprived of his right of recoupment. This was a substantial right, and under the circumstances the entire right was taken away. The plea of *res adjudicata* could be interposed to any original action for damages. The order became final as to him. If it also became final as to plaintiffs, defendant was not injured because he was left with a complete defense; but the

court having changed his ruling, it deprived defendant of all defenses, to which under the law he was entitled. The first ruling deprived him of his recoupment, but gave him another defense. The last ruling deprived him of this other defense, but under it he should have been entitled to his recoupment which had been already taken away.

*Cullen & Sanders,* for Respondents.

It is possible that the court was in error in sustaining the demurrer to the answer and amended answer of the defendant. But the defendant, instead of standing on his answer or his amended answer, filed a second amended answer upon which the case went to trial. When the second amended answer was filed it superseded the other two answers and they were no longer any part of the record in the case. So much of the transcript as shows these two answers, and the proceedings had thereon, should be stricken out, or, at least, not considered by the court. (*Brown* v. *Saratoga R. R. Co.* 18 N. Y. 495; *Gilman* v. *Cosgrove,* 22 Cal. 356; *Barber* v. *Reynolds,* 33 Cal. 501; *Jones* v. *Frost,* 28 Cal. 247; *Sands* v. *Calkins,* 30 How. Pr. 1; *Allen* v. *Compton,* 8 How. Pr. 251; *People* v. *Hunt,* 1 Idaho, 433; *Null* v. *Jones,* 5 Neb. 500; *Brown* v. *Galena Meth. Co.* 32 Kan. 528.) Conceding that the ruling of the court below was erroneous in sustaining the demurrers to the original and amended answers, the defendant did not take the proper course to avail himself of such error. He should have refused to amend, and upon judgment being rendered against him, he could have appealed to this court, and had whatever of error there was in the ruling corrected by the appellate court.

Instead of doing so he elected to change the posture of the case from that on which he deliberately chose to present it to the court, and thereby he waived the right to except to whatever there was of error in the ruling. (*Marden* v. *Wheelock,* 1 Mont. 49; *Orr* v. *Haskell,* 2 Mont. 225; *Perkins* v. *Davis,* 2 Mont. 474; *Collier* v. *Ervin,* 3 Mont. 142; *Francisco* v. *Benepe,* 6 Mont. 243; *Garver* v. *Lynde,* 7 Mont. 113; *Coit* v. *Waples,* 1 Minn. 134; *Becker* v. *Sandusky City Bank,* 1 Minn. 311; *Rees* v. *Leech,* 10 Iowa, 439; *Smith* v. *Cedar Falls R. R. Co.* 30 Iowa, 244; *Melhop* v. *Doane,* 31 Iowa, 416; *Philips* v. *Hosford,*

35 Iowa, 593; *City of Muscatine* v. *Keokuk etc. Packet Co.* 47 Iowa, 350; *Lane* v. *B. & S. W. R. R. Co.* 52 Iowa, 18; *Bixby* v. *Blair,* 56 Iowa, 416.)

The record shows that this cause was tried on the first day of May, A. D. 1888, before Judge N. W. McCONNELL, sitting without a jury, and that he rendered the judgment which is appealed from in this action. It also shows that the statement on motion for a new trial was settled and allowed by Hon. HENRY N. BLAKE, his successor in office. The third subdivision of section 298 of our Code of Civil Procedure expressly provides that the statement shall be presented to "the judge who tried or heard the cause for settlement." The intention of the legislature is so clearly expressed in this section that there is little or no room for judicial construction. Our statute is taken from the amendment made to the Code of Civil Procedure of the State of California (see Hayne on New Trials, § 157, p. 468), and, unlike the Code of Civil Procedure of that State, it does not contain any provision for the settlement of it, in case the judge who tried the cause should die, resign, or become disqualified for any other reason. (See Hayne on New Trials, § 153, p. 447.) This question was raised in the case of *Edwards* v. *Tracy,* 2 Mont. 22, and it was there held that by the use of the word "judge" in the statute instead of "court," it authorized a settlement of a statement to be made in vacation, and that however many changes there might be as to the individual who held the office, yet there was no change in the office, and no vacation therein. It was therefore held that the successor in office of the judge who tried the cause was competent to settle a statement on motion for a new trial. This decision was made upon the statute as it stood in 1873, as it is found in the Codified Statutes of 1871–72, section 374, Civil Practice Act, and we respectfully submit that it is not a binding authority, or any authority, as the statute is now amended.

DE WITT, J.—The record in this case presents the following history: The complaint is for the price of cigars sold and delivered by plaintiffs to defendant. Defendant answered, and admitted the sale and delivery, and set up in recoupment a contract, the terms of which were, generally, that in 1886 he was dealing

in cigars; that plaintiffs approached him to sell their "Flor de B. Garcia Cigars," agreeing that defendant should have the sole and exclusive right of selling, handling, and dealing in said cigars in Montana; that plaintiffs would not sell said cigars to any one else in the Territory; that defendant would cease advertising and selling various other valuable brands of cigars in which he was dealing, and from the sale of which he was deriving much profit; that he would accept said sole agency, would purchase said brand of cigars from plaintiffs, and would introduce and promote the sale thereof to the best of his ability. The answer further alleges, in detail, the performance by defendant of his part of the contract, and the expenditure of large sums of money in placing said cigars upon the market. Then follows the allegation of breach by plaintiffs, in that they sold the said brand of cigars to other dealers in the Territory, by which breach the defendant suffered great damage in his business, which damage he recoups against the plaintiffs' account for the cigars sold. The court below sustained a demurrer to this answer on the ground that the contract pleaded was void as against public policy, being in restraint of trade, and could not be pleaded in recoupment. Defendant accepted the ruling of the court, and took leave to amend, which he did by pleading the same contract, not in recoupment, but as an absolute defense, on the ground that if the contract were void, the plaintiffs could not recover thereunder. The case went to trial in this condition, before the court without a jury. The theory of the case seems to have been preserved until the court made findings and conclusions of law, at which time he held that the contract was not void. Defendant presumably had not introduced evidence of damages by reason of breach, as he was not entitled to under the pleadings; and judgment was made and entered for plaintiffs for the amount claimed. Defendant seems not to have had a day in court. His motion for a new trial was denied. From that order, and the judgment as well, he appeals, having saved his errors complained of by exception.

We will first construe the contract as to whether it must be considered void as in restraint of trade. The rule that contracts that are in restraint of trade shall be void, as against public policy, is among our most ancient common-law inheritances. In *Alger* v. *Thatcher*, 19 Pick. 51; 31 Am. Dec. 119, Morton, J.,

says: "As early as the second year of Henry V. (A. D. 1415), we find by the year books, that this was considered to be old and settled law. Through a succession of decisions it has been handed down to us unquestioned, till the present time." The learned judge traces the history of the rule to its modern modification, that "contracts in restraint of trade, generally, have been held to be void; while those limited as to time or place or persons have been regarded as valid, and duly enforced." He gives the reasons for the rule in the following language: "(1) Such contracts injure the parties making them, because they diminish their means of procuring livelihoods, and a competency for their families. They tempt improvident persons, for the sake of present gain, to deprive themselves of the power to make future acquisitions, and they expose such persons to imposition and oppression. (2) They tend to deprive the public of the services of men in the employment and capacities in which they may be most useful to the community as well as themselves. (3) They discourage industry and enterprise, and diminish the products of ingenuity and skill. (4) They prevent competition, and enhance prices. (5) They expose the public to all the evils of monopoly; and this especially is applicable to wealthy companies and large corporations, who have the means, unless restrained by law, to exclude rivalry, monopolize business, and engross the market. Against evils like these, wise laws protect individuals and the public, by declaring all such contracts void." (See, also, cases in that opinion cited.)

The doctrine is again well stated in *Lawrence* v. *Kidder*, 10 Barb. 641, in which case the court, Selden, J., cites with approval Bronson, J., in *Chappel* v. *Brockway*, 21 Wend. 157, as follows: "There may be cases where the contract is neither injurious to the public nor the obligor, and then the law makes an exception, and declares the agreement valid." In *Oregon Steam Navigation Co.* v. *Winsor*, 20 Wall. 68, Mr. Justice Bradley says: "There are two principal grounds on which the doctrine is founded that a contract in restraint of trade is void as against public policy. One is the injury to the public by being deprived of the restricted party's industry; the other is the injury to the party himself by being precluded from pursuing his occupation, and thus being prevented from supporting

himself and his family. It is evident that both these evils occur when the contract is general, not to pursue one's trade at all, or not to pursue it in the entire realm or country. The country suffers the loss in both cases; and the party is deprived of his occupation, or is obliged to expatriate himself in order to follow it. A contract that is open to such grave objections is clearly against public policy. But if neither of these evils ensue, and if the contract is founded on a valid consideration, and a reasonable ground of benefit to the other party, it is free from objection, and may be enforced."

We have cited these reasons for the rule in full, in order to apply them to the contract under construction. They embody the modern doctrine, as held by the authorities. A recitation alone, of the rule and its reasons, seems to us sufficient to take the contract under consideration out of the operation of its prohibitions. The contract is not general; it is limited as to place and person. The public is not deprived of the alleged restricted party's industry. On the contrary, the contract provides for the placing upon the Montana market the product of the plaintiffs' industry, by the selection and services of a local Montana agent, interested in the success of sales, and to be rewarded by such success. Nor is there any injury to the party himself, the plaintiffs, by their being precluded from pursuing their occupation. Rather, by the contract, they seem to have sought a means of extending the field of their operations, and not of restricting them. In the light of the authorities, the rule and the reasons therefor, and the facts, we are clearly of the opinion that the contract was not in restraint of trade, and not void. It was simply a contract, for a consideration, for the enlistment of the services of an agent for the plaintiffs in their business. The court below was therefore correct in his last view of the contract. It follows that he was wrong in his first position in sustaining the demurrer to the original answer.

Respondent urges that all the proceedings and pleadings, prior to the amended pleadings, on which the case was tried, are *dehors* the case on appeal; citing Sawyer, J., in *Barber* v. *Reynolds*, 33 Cal. 501: "The old complaint, in the form first filed, ceases to be the complaint in the case, or to perform·any further function as a pleading, but the amended complaint falls

into its place, and performs the same, and not different func-
tions." Upon an examination of this case, we find the judge
further saying: "The identity of the action is in no respect
affected;" and it was preliminary to arriving at the conclusion
last quoted that the previous utterance was made. The law, as
counsel cites it, is true, as far as he goes. The old answer in
the case at bar does not "perform any further function as a
pleading;" but we are not precluded from examining that
answer, and the sustaining of the demurrer thereto, for the pur-
pose suggested *infra*. We are mindful of the consequences of
defendant answering over, after demurrer sustained (*Francisco*
v. *Benepe*, 6 Mont. 243), and we, at this time, recur to that
ruling, and review the same, not as if an appeal had been taken
therefrom to this court, but for the purpose of ascertaining
whether the court in such decision, together with his latter
reversal of his position, in the same case, did not deprive
defendant of a substantial right, and exclude him from his day
in court. If that be true, defendant has a remedy. *Ubi jus,
ibi remedium.* If the contract be valid, defendant certainly has
the right to recoup his damages. If the contract be void,
defendant has the right to plead it in bar. But the court
below changed front as often as defendant aligned himself with
the court's last evolution. It was impossible for the defendant
to keep pace with the movements of the court, who finally left
him a judgment debtor, after having twice declared that he had
a good defense, but each time when the court had placed defend-
ant in a position where he could not avail himself of such defense.
For the defendant's disasters, thus resulting, there must be a
remedy. We find it as follows: A party in an action is bound
by his pleadings. He is also bound by the rulings of the court
which he obtains upon his own motion, and is estopped from
claiming such ruling as error. (2 Herman on Estoppel, § 823,
and note.) A party is bound by his theory and presentation
of his case. "A party cannot get relief on one basis, and then
seek a new chance to litigate, on the suggestion that he has a
defense, which he did not see fit to rely on before." (*Beam* v.
*Macomber*, 35 Mich. 457. See, also, *Belanger* v. *Hersey*, 90
Ill. 73; *Sweezey* v. *Stetson*, 67 Iowa, 481.) "Where a party
gives a reason for his conduct and decision touching anything

involved in a controversy, he cannot, after litigation has begun, change his ground, and put his conduct upon another and a different consideration. He is not permitted thus to mend his hold. He is estopped from doing it by a settled principle of law." (*Ohio etc. Ry. Co.* v. *McCarthy,* 96 U. S. 267. See, also, *Dreyfous* v. *Adams,* 48 Cal. 131; *Long* v. *Fox,* 100 Ill. 43; *McQueen* v. *Gamble,* 33 Mich. 344; *Callaway* v. *Johnson,* 51 Mo. 33; *Edwards' Appeal,* 105 Pa. St. 103.)

When the plaintiffs in the case at bar had procured the ruling of the court that the contract was void, they placed their theory of the case upon record. Might they then, "upon afterthoughts, new suggestions, and new aspects of the case, change their position of the case from that on which they deliberately chose originally to present it to the court?" and especially after defendant had accepted the construction of the contract, demanded by plaintiffs, and held by the court. Plaintiffs were estopped by the position they had assumed, and into which they had forced defendant, when, to change that position, in the time and in the manner that it was changed, deprived defendant of all defense whatsoever. The decision of the court holding the contract valid was made after the testimony was closed and the case argued and submitted, and submitted on pleadings which forbade evidence in recoupment. If the court had made his reformed ruling before the close of the case, defendant could have obtained leave to amend himself back to his original position, and obtain a continuance on the ground of surprise, if necessary, to enable him to obtain and produce his evidence of damages. It would seem that the action of the court was accident and surprise, against which no ordinary prudence could have guarded. We are of opinion that plaintiffs were estopped from asserting that the contract was valid, or of receiving the benefit of the ruling of the court to that effect, when such ruling came at the time, in the manner, and under the circumstances that it did, and to the total deprivation to the defendant of his defense to the action. Therefore the latter ruling of the court, although correct by construing the contract, under the circumstances described, and entailing the results that it did, and taken with the former position assumed by the court, and depriving defendant of a substantial right, was error.

We make no reflection upon the distinguished judge who tried the cause. His reformation of his first opinion is a credit as well to his eminent and conceded ability as to his known sense of justice and probity. His action complained of was more in the nature of a misfortune, which happened to be fatal to the defendant.

Respondent urges that the statement on motion for a new trial cannot be considered, as it was not settled by the judge who tried the case, but by his successor in office. It is not necessary to consider this objection, as the *data* for our conclusion are all found in the judgment roll, and the appeal is from the judgment, as well as the order denying the motion. We cannot leave this case without animadverting upon the record as it is presented. This court has heretofore had occasion to remind counsel that the preparation of a record is their duty, and it is not for them to leave the Supreme Court to grope through a disorderly mass of immaterial matter to ascertain that which counsel relies upon. (*Upton* v. *Larkin*, 7 Mont. 462; *Raymond* v. *Thexton*, 7 Mont. 305; *Fant* v. *Tandy*, 7 Mont. 443; *Sherman* v. *Higgins*, 7 Mont. 479.) In the record in this case, the complaint, second amended complaint, replication, judgment, notice of motion, and specification of errors all appear twice in full, instead of being once inserted, and afterwards noticed by appropriate reference. Where reference is made, pages are omitted. It is difficult to refer to page ——. The matter is not presented in that orderly, systematic, chronological method that presents to the court an intelligent view of the case at a reading. When we do arrive at the gist of the matter, it is after such labor as caused the learned compilers of the Institutes of Justinian to say, in the dedication of that work, *et opus desperatum, quasi per medium profundum euntes cœlesti favore ad implevimus.* The judgment is reversed, and the cause remanded for a new trial.

BLAKE, C. J., and HARWOOD, J., concur.