AUTHIER, RESPONDENT, v. BENNETT BROTHERS COMPANY, APPELLANT.

[Submitted April 12, 1895. Decided April 29, 1895.]

LIBEL—*Reputation of plaintiff.*—In an action for libel, the good reputation of the plaintiff being alleged and denied, the mere fact that there was no evidence contradicting plaintiff's proof of a good reputation would not alone entitle him to a verdict where the defendant denied the publication of the libel and also pleaded justification.

APPEAL—*Statement—Settlement.*—It is the duty of the district judge to require the statement on appeal to be made correct in substance, and orderly and chronological in

form, withholding his settlement until this is done, and not to leave it to the appellate court to decipher from an incongruous mass of material the matter which was before the trial court.

*Appeal from Second Judicial District, Silver Bow County.*

ACTION for libel. Plaintiff's motion for a new trial was granted by McHATTON, J. Reversed.

Statement of the case by the justice delivering the opinion.

This is an appeal from an order granting a new trial. The action was for libel. The libel declared upon was the alleged false and malicious publication in a merchant's protective association of the following :

     "Copyrighted by Andrews and Olds.    (Form 1.)

       "Report of Delinquent Accounts.

"To R. A. Bell, Agent : The following report of delinquent accounts is this day made to you by article III. of the Merchants' Protective Contract, viz. :

| Name of Delinquent Debtor. | Occupation. | Residence. | When Account Closed. | Amount of Delinquent Account. |
| --- | --- | --- | --- | --- |
| C. H. Authier. | Butcher. | Helena. | June, 1887. | $168.65 |

       "By Bennett Brothers Company, Butte."

In the answer the defendant denied the publication as alleged in the complaint, and also pleaded a justification. The case was tried on these pleadings.

Furthermore, the plaintiff set up in his complaint "that, at the time of the commission of the wrongs by the defendant hereinafter mentioned, he (the plaintiff) was, and always had been reputed to be, an honest man, and was so accepted among his neighbors and the inhabitants and business men of the · city of Helena and state of Montana and elsewhere."

The defendant, in its answer, denies "that, at the times mentioned in plaintiff's complaint, plaintiff was, or always had been reputed to be, an honest man, or was so accepted among his neighbors or the inhabitants or the business men of the city of Helena or the state of Montana."

The verdict of the jury was for the defendant. Plaintiff's

motion for new trial was granted.    From this order defendant appeals.

The specification of error upon which the motion was granted is as follows :  "The plaintiff specifies as error that there being absolutely no evidence contradicting the material allegations of plaintiff's complaint, except the witness Kipp, whose testimony was immaterial as showing what took place in Idaho, where plaintiff never lived, and numerous witnesses in Butte, where he did live, testifying to his good character, and it being absolutely essential that the defendant should establish by the preponderance of the evidence that the plaintiff's character was bad as charged in the libel, and substantial damages having been proven by the bare fact of such a false publication without proof of special damages, plaintiff was entitled to a verdict, and is now entitled to a new trial."

*F. T. McBride* and *George Haldorn,* for Appellant.

*F. E. Stranahan* and *R. G. Davies,* for Respondent.

DE WITT, J.—We are of opinion that, even if the specification of error is true, it is not sufficient upon which to grant a new trial.    We may assume, as the specification states, that it was proven, without substantial conflict of testimony, that the plaintiff's character was good; and by the word "character" we suppose counsel means "reputation."  There is some difference in the authorities upon the question of proving the plaintiff's general reputation.

It is said in Odgers on Libel and Slander :  "The plaintiff cannot give evidence of general good character in aggravation of damages merely, unless such character is put in issue on the pleadings, or has been attacked by the cross-examination of the plaintiff's witnesses; for till then the plaintiff's character is presumed good."  (Page 310.)  "One way, but a very dangerous one, of minimizing the damages, is to show that the plaintiff's previous character was so notoriously bad that it could not be impaired by any fresh accusation, even though

undeserved.    The gist of the action is the injury done to the plaintiff's reputation; and, if the plaintiff had no reputation to be injured, surely he cannot be entitled to more than nominal damages.    Hence the fact that the plaintiff had a general bad character before the date of the libel or slander may be given in evidence in mitigation of damages.''    (Page 320.)   ''There has been a great conflict of opinion as to the admissibility of evidence of the plaintiff's general bad character, and of rumors prejudicial to his reputation; but the law on the point has now been finally settled by the decision in *Scott* v. *Sampson,* 8 Q. B. Div. 491.''    (Page 321.)    This is an English edition of an English work, and English authorities only are referred to.

In Townsend on Slander and Libel we find the following :   '' It is a much vexed question whether, in an action for slander or libel, the plaintiff may, in aggravation of the damage he has sustained, introduce evidence of his good reputation prior to the publication complained of.''    (Page 645.)    ''The plea of not guilty put in issue the general character [reputation] of the plaintiff, and therefore upon a plea of not guilty, only, the defendant might give in evidence in mitigation the general bad character [reputation] of the plaintiff *before and at the time* of the publication complained of.    Certainly, a person of disparaged fame is not entitled to the same measure of damages with one whose character is unblemished, and it is competent to show that by evidence.    This principle, so much discussed at an early day, and for a time left unsettled, has since been so well established by authority as not now to be open for discussion;''    citing numerous authorities.    (Page 669.)    ''It has been held in some cases that the defendant may, in mitigation of damages, prove that, *prior* to the publication complained of, a general report or suspicion existed that the plaintiff had committed the act charged.    The decisions to the contrary are quite numerous.''    (Page 678.)

In Newell on Defamation, Slander and Libel we find it stated :    ''Proof of the bad character of the plaintiff at and before the time of the alleged slander is admissible in mitigation

of exemplary as well as compensatory damages.'' (Page 890. See, also, division 3, page 823, § 1, and cases cited.)

It has been held that if a justification is pleaded, and testimony offered tending to prove it, testimony of plaintiff's reputation is not competent. (*Miles* v. *Van Horn*, 17 Ind. 245; *Matthews* v. *Huntley*, 9 N. H. 146; *Severance* v. *Hilton*, 24 N. H. 147; *Chubb* v. *Gsell*, 34 Pa. St. 114.) It has also been held that, if justification is pleaded, the plaintiff may show his good reputation in aggravation of damages. (*Harding* v. *Brooks*, 5 Pick. 244; *Byrket* v. *Monohon*, 7 Blackf. 83; *Smith* v. *Lovelace*, 1 Duv. (Ky.) 215; *Downey* v. *Dillon*, 52 Ind. 442; *Moyer* v. *Moyer*, 49 Pa. St. 210.) It has also been held that the defendant may show the bad character of plaintiff in mitigation of damages. (*Moyer* v. *Moyer*, 49 Pa. St. 210.) Upon these points, see, also, the text writers above cited.

It is not necessary in this case for us to determine what view we would take as to pleading or proving the plaintiff's good or bad reputation in aggravation or mitigation of damages. We cite the above authorities simply for the purpose of showing that the question of the plaintiff's reputation has been held to be a circumstance in aggravation or mitigation of damages. But the specification in this case assumes a position which is not sustainable, to wit, that the plaintiff's good reputation is a complete and perfect cause of action, if joined to the averment that the alleged libel was published; that is to say, if an alleged libel is pleaded to have been published against a person of good reputation, the cause of action is complete, and there is no defense. The untenableness of the position is apparent. In the case at bar the defendant denies the publication of the alleged libel as set out in the complaint, and also pleads justification. The case was tried upon these pleadings. No objections were made to them, if any existed. For all that appears by the specification, the defendant made out its defense independent of the reputation of the plaintiff. Therefore the bare fact that plaintiff's reputation was shown to have been good could not alone be a cause for granting a new trial.

The case is remanded, with directions to deny the motion for a new trial, and to enter judgment upon the verdict for defendant for costs.

We cannot leave this case without animadverting upon the record which was filed.    The statement on motion for new trial commences as follows :    " The case being regularly called, the plaintiff introduced." Here the language breaks off abruptly. Instead of it appearing what the plaintiff introduced, the next page of the record is entitled : "Amendments Proposed by Defendants to plaintiff's Proposed Statement on Motion for New Trial." "Amend by striking out from said proposed statement, beginning at line 11, pages 1 and 2 thereof, and substitute therefor pages 1 to 73, as follows, inclusive." But the statement, as proposed, is difficult to identify. There is nothing to indicate what or where line 11, page 1, is. The record says :    "Substitute pages 1 to 73, as follows."    Probably this indicates those pages in the proposed amendments, but that paging is not carried into this record, and there is no way by which we can ascertain what they were.    Commencing on the next page of the record, there follow 81 pages of the testimony, frequently by question and answer.    Then the record states that the plaintiff rested, and defendants moved for a nonsuit, which motion it appears was overruled.    On the next page of the record appear more amendments.    The language is as follows :    "Amend by striking from said proposed statement pages 3, 4 and 5 thereof, and substituting therefor the following pages 74 to 123."    Again, this paging does not appear.    On the next page of the record appears :    "S. L. Davis, recalled on behalf of defendant." The record at this point seems to break into some matter which should appear somewhere else, but there is no showing as to what that matter is.    Then follows a considerable amount of testimony introduced by the plaintiff.    Finally, the record reaches a point where we find the following:    " The foregoing amendments are correct, and are allowed without approval of form, and made part of the statement, and are ordered inserted therein. John J. McHatton, Judge."    But these amendments were not

inserted in the statement, for immediately following the signature of the judge comes the language :   "The plaintiff, to disprove the allegations of the proof of the libel of defendant, introduced the following witnesses, who testified as follows." Then is inserted testimony of a number of witnesses for plaintiff in rebuttal.   The instructions are next inserted, and the motion for a new trial, and the specification of errors.   After all this the court certifies that the above statement is correct, and the same is allowed.

This record is much like that in *Becker* v. *Commissioners*, 10 Mont. 87, in which case we said :   "The engrosser, instead of constructing a perfect work, has simply piled up the material in a disorderly mass, as it came to his hand.   That this is not an adherence to chronological order does not require extended discussion."   (See, also, *Newell* v. *Meyendorff*, 9 Mont. 254, and cases there collected; *Barger* v. *Halford*, 10 Mont. 57, 24 Pac. 699; *Mont. Railway Co.* v. *Warren*, 6 Mont. 275, 12 Pac. 641; *Fant* v. *Tandy*, 7 Mont. 443, 17 Pac. 560; *Sherman* v. *Higgins*, 7 Mont. 479, 17 Pac. 561; *Raymond* v. *Thexton*, 7 Mont. 299, 17 Pac. 258; *Rodoni* v. *Lytle*, 13 Mont. 123.)

In allowing the amendments in the case at bar, the judge made the same note as he did in the case last cited, namely, that he settled the same "without approval of form."   But it is the duty of the district judge, if the statement is incorrect in substance or form, to require it to be made correct in both such respects before settling it.   To settle a statement does not mean for the district judge to attach his approval to an incongruous mass of material, and leave it to the appellate court to decipher the matter which was before the district court.   If the statement is not prepared as required by the law and practice and rules of court, it is the duty of the district judge to withhold his settlement.   To so do is, as remarked in *Sherman* v. *Higgins*, 7 Mont. 482, "the proper practice, and we hope to see it universally adopted by the judges of the trial courts."

As said in *Newell* v. *Meyendorff*, 9 Mont. 264:   "The mat-

ter is not presented in that orderly, systematic, chronological method that presents to the court an intelligent view of the case at a reading.''

It seems to be a severe course to strike out an appellant's record when he appears to have an appeal which should be sustained. Moreover, in this case the district judge was as much at fault in settling the statement as was counsel in preparing it. The record has been in this court for eighteen months, and no motion made to strike it out, and no oral argument made by the respondent on the hearing. We concluded to examine the case on its merits, but our doing so in this case is not a precedent for a further exercise of our patience in this respect in the future. The fact is that, since the views were expressed in the cases above cited, records have been much improved, and we have mercifully hesitated to suddenly make an example of the appellant herein.

*Reversed.*

PEMBERTON, C. J. and HUNT, J., concur.