HON. WILLIAM H. DE WITT,  
HON. WILLIAM H. HUNT, } Associate Justices.

---

STATE, RESPONDENT, *v.* O'BRIEN, APPELLANT.

[Submitted March 2, 1896. Decided March 9, 1896.]

CRIMINAL LAW—*Appeal—Rulings during progress of trial—Review on appeal from judgment.*—Under section 2321, Penal Code, providing that upon an appeal taken by the defendant from a judgment the court may review any intermediate order or "ruling involving the merits or which may have affected the judgment," rulings of the trial court upon matters of law in the exclusion or admission of testimony during the progress of the trial may be brought before this court by bills of exception on an appeal from the judgment without a motion for a new trial; but this section does not permit the review, on an appeal from the judgment only, of matters embraced within any of the cases for which a new trial may be granted under section 2192, *Id.*, except errors in the decision of questions of law during the trial, which may be reviewed either by appeal from the judgment or from an order denying a motion for a new trial. (*State* v. *Whaley*, 16 Mont. 594, distinguished.)

SAME—*Evidence—Impeachment—Witness.*—It is error to allow the prosecuting attorney,

for the purpose of impeachment, to testify as to what a witness to the homicide stated at the coroner's inquest, by repeating her statements as taken down in writing by him at the time and stating that she had so stated, where the statements concerning which she was to be impeached had not been first related to her with an opportunity to answer as to their truth or to explain them, nor the written evidence shown to her before putting the questions, as required by section 3380 of the Code of Civil Procedure.

SAME—*Same—Motives of defendant.*—On a trial for murder, where the killing occurred in defendant's house, the relations existing between the defendant and a woman with whom he was living may be proved by the state as bearing upon the defendant's motives, and as to whether under all the circumstances he acted as a reasonable man.

SAME—*Same—Statements by defendant before coroner.*—The state should not be permitted to introduce statements by the defendant before the coroner immediately after the homicide, made in ignorance of his lawful rights, without the aid of counsel and under the belief that he was obliged to answer the questions put to him.

SAME—*Trial—Objections without merit.*—Continual objections by the counsel for the state to questions asked the witnesses for the defendant, many without merit, and made for the purpose of keeping a knowledge of the case on its merits from the jury, is improper practice.

SAME—*Reasonable doubt—Instructions.*—An instruction as to reasonable doubt, that, if the jury, "or any one of them," entertain any reasonable doubt upon any single fact or element necessary to constitute the crime, the defendant should be given the benefit of the doubt and acquitted, is objectionable in implying that if one juryman has a reasonable doubt the eleven must concur in acquittal.

SAME—*Self defense.*—The general doctrine of the right of a man to defend himself, if assailed in his own house, is that he need retreat no further.

SAME—*Additional witnesses—Showing required to obtain.*—Under section 4656, Penal Code, restricting the state and defendant each to six witnesses, except upon order of the court upon proper showing by affidavit or otherwise, it is proper for the court to require the defendant, upon a request for a subpœna for additional witnesses, to disclose the materiality of their testimony.

REHEARING APPEAL—*Bills of exception—Verity.*—A bill of exceptions imports verity, and, it being the duty of the trial judge not merely to sign what is presented as a bill of exceptions but to examine it and make it conformable to the facts, the appellate court will assume that a bill, certified by the judge to contain all the evidence bearing upon the exception taken, is correct.

*Appeal from Eighth Judicial District, Cascade County.*

CONVICTION for manslaughter. The defendant was tried before BENTON, J. Reversed.

· Statement of the case by the justice delivering the opinion.

The defendant was indicted for murder in the first degree, and convicted of manslaughter, in the killing of one Frank Bixby, in Cascade county, on August 18, 1895. He appeals from the final judgment of conviction. The information charges that the killing was done with a rifle.

*Leslie & Downing,* for Appellant.

I. It was not a proper exercise of judicial authority for

the court to demand of the defendant in the first instance that he disclose his defense.   The two persons for whom a subpoena was requested, were essential and important witnesses for the defendant on the trial of said cause, and the refusal of the court to permit a subpœna to be issued for them, was a denial of justice and we think in conflict with sections 6 and 16, article III of the state constitution.

II.   The cross-examination of the defendant in regard to his evidence before the coroner's jury under the circumstances in which it was extracted from him was extremely prejudicial to the defense.   There is no question but what the statements made by the defendant such as they were, were not voluntary, were made under duress, without counsel, without being advised as to his rights, and without opportunity afforded him to consult with an attorney.   While this evidence was withdrawn, its effect upon the jury could not be withdrawn.   (*People* v. *McMahon*, 15 N. Y. 384; 1 Greenleaf on Evidence (12th Ed.) §§ 224, 225; *People* v. *Mordeau*, 8 N. E. 496; 1 Wharton on Evidence (7th Ed.) § 690.)   At all events the foundation for the introduction of such evidence should have been laid by preliminary proof showing *prima facie* that the confession, if such it could be called, was freely and voluntarily made.   (*People* v. *Soto*, 49 Cal. 69; *People* v. *Yeaton*, 17 Pac. 544.)

III.   The cross-examination of Minnie O'Brien was improper.   It did not relate to her evidence in chief, and the object and purpose of the evidence was to injure and prejudice the defendant.   (*State* v. *Gleim*, 17 Mont. 17.)

IV.   The questions put to the prosecuting attorney for the purpose of impeaching Mrs. O'Brien were improper.   No such questions were asked her by the prosecution while she was on the stand.   (*State* v. *Hunsaker*, 16 Pac. 605; *People* v. *Devine*, 44 Cal. 432; 1 Thompson on Trials, §§ 501, 502; § 3380, Code of Civil Procedure.)

V.   The court having charged that a man assailed unlawfully in his own house is not obliged to retreat under any circumstances, it was error to charge in the same instruction that

it must appear from the evidence that the danger to the defendant was so pressing and urgent that in order to save his own life, or prevent his receiving great bodily harm the killing of the deceased was absolutely necessary. (*State* v. *Middleham*, 17 N. W. 446; 2 Wharton on Criminal Law (7th Ed.) § 1024.) If the court gives an instruction, correctly stating the law, and afterwards another nullifying the first, the judgment will be reversed. (*People* v. *Campbell*, 30 Cal. 313; *People* v. *Simons*, 60 Cal. 73; *People* v. *Anderson*, 44 Cal. 69; *Territory* v. *Owings*, 3 Mont. 137.) Where on a trial for murder, two parts of the charge of the court to the jury are contradictory, and one is correct and the other is erroneous, the judgment of conviction will be reversed, even though the appellate court may be satisfied from the evidence that the jury ought to have found the defendant guilty. (*People* v. *Valencia*, 43 Cal. 552; *People* v. *Wong Ah Ngow*, 54 Cal. 154.)

*Henri J. Haskell*, Attorney General. and *Ella K. Haskell*, for the state, Respondent.

HUNT, J.—1. This appeal being from a judgment, and the record containing bills of exception, but no motion for a new trial, it is argued in behalf of the state that this court has no jurisdiction to pass upon the errors alleged in the exclusion and admission of certain testimony during the progress of the trial. But this appeal is taken since the adoption of the Penal Code of 1895.

Under the former Code (§ 394, page 476, Comp. St., 1887), an appeal to the supreme court could be taken by the defendant as a matter of right from any judgment against him, and upon appeal any decision of the court or intermediate order made in the progress of the case could be reviewed. The interpretation placed upon that statute was that errors of law in the admission or exclusion of illegal or legal evidence must have been called to the attention of the district court by motion for new trial, to the end that that court should thereby first have an opportunity to correct its own errors before an

appeal lay to this court.  (*State* v. *Whaley*, 16 Mont. 574.) But the Penal Code of 1895 provides as follows: Section 2270: "An appeal to the supreme court may be taken by the defendant, as a matter of right, from any judgment against him." Section 2321: "Upon an appeal taken by the defendant from a judgment, the court may review any intermediate order or ruling involving the merits, or which may have affected the judgment."

Section 2321 is identical with section 1259 of the Penal Code of California. The difference between section 394 of the Code of 1887 and section 2321 of the Code of 1895, consists in this: Under the old Code, the appellate court was limited in its review to any decision of the court or any intermediate order made in the progress of the case; under the new Code, upon appeal from a judgment, the court may review not only any intermediate order, but likewise *a ruling involving the merits, or which may have affected the judgment.* In the use of the word "ruling" the legislature evidently intended to permit a review of the actions of the district court upon matters of law in the exclusion or admission of testimony involving the merits of the case on an appeal from the judgment only. Such rulings had not been included in the interpretation of the words "decision or intermediate order" in the older statute; that is, a distinction has been recognized between a decision and a ruling. The older statute is therefore to be distinguished from the new. In the one, a decision or order was regarded as a determination by the court in the settlement of the controversy or matter before it; while in the new Code a ruling means generally a settlement or decision of a point of law arising upon the trial of the case, without necessarily the force or solemnity of a judgment or order. (Black, Law Dict.; Cent. Dict.)

We do not hold that under section 2321, above cited, matters may be reviewed on appeal from a judgment only when they are embraced within any of the provisions of the law made for granting new trials (section 2192), except errors in the decision of questions of law arising during the course of the trial.

The latter errors can, however, be reviewed either upon ap-
peal from the judgment, or from an order overruling a motion
for a new trial.    This is the practice in California, and, having
taken section 2321 *verbatim* from the Code of that state, we
adopt the constructions placed upon it in the decision of *Peo-
ple v. Keyser*, 53 Cal. 184, where it was said :    "The defend-
ant may appeal from the judgment without having made a mo-
tion for a new trial.    *    *    *    If, for instance, one ground
of the motion be that the court erred in the decision of a ques-
tion of law, and the particular alleged error relied upon be
the exclusion of certain testimony, the bill should set out the
offered testimony, its exclusion, and the exception to the de-
cision, and so much of the testimony and proceedings in the
case as may be necessary in order to give point to the excep-
tion."

The errors alleged by bills of exception are therefore prop-
erly before us.

2.    So far as the testimony is before us by the bills of ex-
ception, it appears that the defendant lived with a woman
whom he said was his wife, but to whom it is doubtful if he
had ever been married.    The defendant seems to have been
jealous of this woman, and particularly of the attentions paid
to her by the deceased.    About 11 o'clock on the night of the
killing, certain witnesses went to the house of the defendant,
unlocked the door, lighted a lamp and found the body of de-
ceased lying on the floor, on his left side, with his head towards
the south and his feet towards the north.    The door was on
the south side of the house.    There was a rocking chair near
to the feet of the deceased, and a knife close to his hands.
The coroner noticed a hole through the cabin, said to be a
bullet hole, and found a bullet on the floor about eighteen
inches from the left leg of a chair in which the deceased was
supposed to have been sitting when shot.    The coroner found
two empty cartridges, one outside of the door, and one in the
gun.    On the trial, a board with a bullet hole in it was intro-
duced, said to have been found opposite where the chair was
standing on the north side of the feet of the deceased, and

about twenty-five inches above the floor of the cabin. Blood was found in the seat of the chair, and upon the back of the chair. The clothing on the body was perforated. The wounds on the deceased showed that two bullets passed from one side of the body to the other.

The theory of the state was evidently that the defendant shot the deceased from the outside of the cabin, and while the deceased was sitting in the chair. Defendant admitted the killing, and attempted to prove that it was impossible for a person to shoot from the outside of the house, and strike the body as the deceased's body was struck, and make the bullet hole that was shown in the wall of the cabin. His own evidence was to the effect that he was in his house, remonstrating with the deceased concerning his visits to the woman; that they had some words; and that deceased, who was sitting in a rocking chair, grabbed a knife from the window; that thereupon defendant grabbed the gun, whereupon deceased squatted, and then the defendant shot twice. Defendant further said that he shot the deceased because he was afraid he was going to cut him to pieces with the knife he had in his hands.

3. During the trial, the defendant called Mrs. Minnie O'Brien, who was the only witness to the killing. She said : That, upon the night of the killing, O'Brien brought the gun into the house, and then went out to do the chores. While he was out, the deceased came in. When O'Brien came back, and found deceased there, he remonstrated with him concerning his frequent visits at the house, whereupon deceased reached for the knife, saying, "I would like to see a ——— like you keep me away." That O'Brien then shot. The witness then testified in relation to a conversation which took place between O'Brien and the deceased shortly before the killing. The defendant objected, for the reason that it was not proper cross-examination, and called for a conversation that had not been gone into. The prosecuting attorney then asked the witness, "Did you testify to that conversation at the coroner's inquest?" Answer: "I don't remember what I testified to there." After various questions as to the condi-

tion of affairs just preceding the killing, the county attorney asked the witness to examine Exhibit R, and state whether or not, on the occasion referred to [meaning, doubtless, the examination of the witness before the coroner], she made the following statement : " ' The first I knew of any difficulty between Mr. O'Brien and the deceased was Saturday evening, the 17th of August, 1895.' Did you so state upon that occasion ? " The defendant objected to the question. The record discloses no answer, but the objection was overruled. No further questions, material to the homicide, were put to the witness, relating her statements before the coroner to her, and asking her whether she had made them as related.

On rebuttal, the county attorney testified to the effect that he had taken down the testimony at the coroner's inquest, and took the deposition of Mrs. Minnie O'Brien, which was Exhibit R; that such testimony was taken down, and afterwards read to the witness, before she was asked to sign it. Thereupon the assistant to the county attorney, against the objection of the defendant, asked the county attorney to examine Exhibit R, and state whether or not, on an examination thereof, the witness testified or did not testify upon that occasion to the "following statement." Thereupon the assistant to the county attorney would read portions of the deposition to the jury, and the county attorney would answer affirmatively, "She did." Then, by the direction of the assistant prosecuting counsel, the county attorney would again read the statement of the witness made at the coroner's inquest. This line of examination was kept up by repeated questions to the county attorney, the form of the question generally being to " state whether or not the witness Minnie Warren did or did not testify on that occasion to the following," giving her original testimony before the coroner. The matters which the questions referred to were the witness' statements before the coroner concerning the acts and conduct of the defendant and the deceased just prior to the killing, and at the time of the killing. The object of the examination was evidently to impeach the witness Minnie O'Brien, by showing that she made

inconsistent statements concerning the material facts. The defendant preserved his objections all through, but the court uniformly overruled his objections and permitted the testimony to go in. This was material error, and requires a reversal of the case.

It is provided by section 2078 of the Penal Code that the rules of evidence generally applicable to civil cases are to be applied in the trial of criminal cases. Section 3380 of the Code of Civil Procedure provides as follows :

" Section 3380. A witness may also be impeached by evidence that he has made at other times, statements inconsistent with his present testimony; but before this can be done the statements must be related to him, with the circumstances of times, places and persons present, and he must be asked whether he made such statements, and if so, allowed to explain them. If the statements be in writing, they must be shown to the witness before any question is put to him concerning them."

No authorities are needed further than the statute itself. It is but the expression of the reason of judicial decisions for years and years. By disregarding its requirements, well established principles of the law of cross-examination were violated. (Wharton's Criminal Evidence, § 483; Thompson on Trials, § 502.)

As the case must be tried again, we will briefly indicate our views upon a few of the more important points raised by the record

The relations existing between the defendant and the woman Minnie O'Brien at and before the homicide should properly go before the jury, as bearing, perhaps, upon the question of the motives which guided the conduct of the defendant in the killing, and whether or not he acted as a reasonable man under all the circumstances of the case.

The court ought not to have permitted any of the evidence given by the defendant before the coroner to be introduced. It plainly appears that the defendant was called before the coroner by that official immediately after the homicide, and

testified without any knowledge of his lawful rights, without the aid of counsel, and under a belief that he had to answer the questions put to him.

The record shows that almost every question asked the witnesses for the defendant was objected to by the counsel for the state.   Many of these objections were wholly without merit, as they sought to exclude from the jury matters directly connected with the scene of the homicide, the conduct of the parties and the homicide itself.   This practice is to be censured, and we quote the following language of the supreme court of California (*People* v. *Williams*, 18 Cal. 195) as particularly applicable to the conduct of this case :   ''As no man ought to be convicted unless, on a full exposure of the merits of the case, he is really guilty, it would seem that little or nothing is to be gained by interposing technical objections to keep a knowledge of the whole case on its legal merits from the jury.   Questions as to the admissibility of evidence frequently arise, and, in the hurry of a *nisi prius* trial, the best judge may err, especially when suddenly called to pass upon them without the aid of books or argument.   These constitute the usual grounds of reversal.   Whenever there is any doubt of the question, or, rather, whenever the evidence proposed by the defense is not plainly inadmissible, it is better to let it go in, since, in nine cases out of ten, a single equivocal fact, of doubtful bearing upon the case, would have no effect upon the judgment of the jurors, who are usually disposed to pass, and do pass, upon the general merits.   Not unfrequently the offer to make the proof and the exclusion of it have about the same effect on the minds of the jury—though it should not—as if the proof were introduced.   If the course here suggested were pursued by the prosecuting attorneys, we are convinced that the number of convictions would not be less than at present, while the number of appeals, or, at least the number of those successfully prosecuted, would be greatly diminished.''

In several of the instructions, the court, in its statement of the law of justifiable homicide and self defense, departed from the terms of the statute.   It certainly is safer for a judge to

adhere to statutory definitions where they cover the law of homicide as fully as the new Codes do.

We disapprove of instruction No. 16, where the court uses this language : "And if the jury, *or any one of them*, entertain any reasonable doubt upon any single fact or element necessary to constitute the crime, it is your duty to give the prisoner the benefit of such doubt, and acquit him." It cannot be that the court meant that if one juryman has a reasonable doubt, and eleven have not, the eleven must concur in an acquittal; but the language of the instruction seems to imply that they should so deliberate.

Many of the instructions asked by the defense are embraced within those given, and the law of justifiable homicide as approved by this court in *Territory* v. *Burgess*, 8 Mont. 58, was followed.

We understand the general doctrine of the right of a man to defend himself, if assailed in his own house, to be that he need retreat no further. As said by Wharton on Criminal Law (§ 502) : " Here he stands at bay, and may turn on and kill his assailant if this be apparently necessary to save his own life; nor is he bound to escape from his house in order to avoid his assailant. In this sense, and in this sense alone, are we to understand the maxim that ' every man's house is his castle.' An assailed person, so we may paraphrase the maxim, is not bound to retreat out of his house to avoid violence, even though a retreat may be safely made. But he is not entitled, either in the one case or the other, to kill his assailant unless he honestly and nonnegligently believes that he is in danger of his life from the assault." Under this view, certain instructions given should be modified.

Section 4656 of the Political Code provides as follows : "Section 4656. In criminal actions in a court of record, the clerk of the court must not issue a subpœna on behalf of the state or defendant for more than six witnesses, except upon the order of the court or judge, and such order may be made upon proper showing by affidavit or otherwise."

The defendant asked for a subpœna for more than six wit-

nesses. The clerk refused to issue the subpœna. The judge required defendant's counsel to show that the testimony of the additional witnesses was material, and offered to allow the defendant's counsel to orally show such materiality by stating the substance of their proposed testimony, and even offered to not disclose such statement to the counsel for the state. Counsel for defendant declined to disclose or intimate what he expected to prove by said witnesses, contending that he had a constitutional right to these subpœnas without the showing. The statute seems to very reasonable, and the action of the court requiring the showing was not improper.

Judgment reversed, and case remanded, with directions to grant a new trial.

*Reversed.*

PEMBERTON, C. J., and DE WITT, J., concur.

---

## ON MOTION FOR REHEARING.

PER CURIAM.—Counsel for the state objects to the decision formerly rendered in this case on the ground that this court assumed that all the testimony given on the trial was contained in the bill of exceptions, while the fact is. as counsel alleges, that all the testimony upon the trial was not so contained nor does the judge so certify. Counsel is wrong in his statement. It is true that the record did not pretend to bring up all the testimony, nor did we, in deciding the case, assume that all the testimony was contained in the bill of exceptions. We did, however, as matter of record, and not of assumption, find that the bill of exceptions contained all the evidence necessary to illustrate the point of the exception.

The bill of exceptions as proposed to be settled was served upon the county attorney, and afterwards settled by the judge, and in the certificate the judge says that the bill contains all the evidence bearing upon the exceptions taken by the defendant.

The bill of exceptions imports verity. (*In re Thompson*, 9 Mont. 381.)

It is the duty of the judge, not simply to sign what is presented to him as a bill of exceptions, but to examine it, and make it conformable to the facts, both in form and in fact. (*Authier* v. *Bennett Bros. Co.*, 16 Mont. 110.)

If the bill of exceptions did not so conform,—as the state's attorney complains that it does not,—the district judge should not have allowed it to come to this court in that condition. This court was obliged to examine and consider the bill of exceptions as it was transmitted from the district court, and to credit it with being correct.

The motion for rehearing is denied.