### SOUTHERN COTTON OIL CO. v. SHELTON.

#### (Circuit Court of Appeals, Fourth Circuit. November 30, 1914.)

#### No. 1249.

**1. APPEAL AND ERROR ☞883—REVIEW—QUESTION OF FACT—ESTOPPEL.**

Where the existence of a certain fact is assumed in the trial court, and the trial proceeds on that assumption without objection, neither party may question the existence of such fact in the appellate court.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3611; Dec. Dig. ☞883.]

**2. EJECTMENT ☞31—NATURE OF ACTION—PLEADING.**

Code Civ. Proc. S. C. 1912, § 123, subd. 2, which gives a plaintiff two actions for the recovery of real property or of possession of real property, provided the costs of the first action are first paid and the second action is brought within two years after the first is terminated by judgment or nonsuit, in view of section 218, which permits the joinder of several causes of action, legal or equitable, or both, in the same suit, is not limited in its application to actions in which the sole relief sought is the recovery of real estate or possession thereof, but applies as well to actions in which two causes are joined, and whether or not such an action is within the statute must be determined by the essential nature of the complaint, in view of the facts alleged and the prayer for relief.

[Ed. Note.—For other cases, see Ejectment, Cent. Dig. §§ 120–122; Dec. Dig. ☞31.]

**3. EJECTMENT ☞63—CONSTRUCTION OF PLEADINGS.**

Complaints in two actions brought by plaintiff against the same defendant construed, and both held to be actions for the recovery of real prop-

---

erty and of possession thereof, within the meaning of Code Civ. Proc. S. C. 1912, § 123, subd. 2, which requires as conditions precedent to a second action for such relief that the costs of the first action be first paid, and that the second be brought within two years after the first has been finally determined.

[Ed. Note.—For other cases, see Ejectment, Cent. Dig. §§ 154–157; Dec. Dig. ☜63.]

**4. PLEADING** ☜34—CONSTRUCTION OF COMPLAINT—PRAYER.

The prayer of a complaint may be disregarded for some purposes, but not where there is a contention made by the plaintiff as to the character of the action presented by his own pleading, in which case the prayer is to be considered.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 5½, 66–74; Dec. Dig. ☜34.]

**5. ACTION** ☜37 — LEGAL OR EQUITABLE — CONSTRUCTION OF PLEADING — WAIVER.

Where, on removal of a cause, it was docketed on the law side in the federal court, and tried to a jury as a law action, without objection by the plaintiff, he waived the right to have his complaint construed as a bill in equity.

[Ed. Note.—For other cases, see Action, Cent. Dig. §§ 311–319; Dec. Dig. ☜37.]

**6. EJECTMENT** ☜39—SUCCESSIVE ACTIONS—IDENTITY OF PARTIES.

Two actions by the same plaintiff to recover land from a holding-over tenant—the first against the tenant and another, to whom it was alleged he had wrongfully attorned, and against whom relief was also asked, and the second against the tenant alone—have sufficient identity of parties to bring them within the scope of a statute requiring a second action to recover real property to be brought within two years after the first has been terminated by judgment or nonsuit.

[Ed. Note.—For other cases, see Ejectment, Cent. Dig. § 131; Dec. Dig. ☜39.]

Pritchard, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Eastern District of South Carolina, at Columbia; Henry A. Middleton Smith, Judge.

Action at law by William J. Shelton against the Southern Cotton Oil Company. Judgment for plaintiff, and defendant brings error. Reversed.

D. W. Robinson, of Columbia, S. C. (Thomas & Lumpkin, of Columbia, S. C., on the brief), for plaintiff in error.

William H. Lyles, of Columbia, S. C. (Lyles & Lyles, of Columbia, S. C., on the brief), for defendant in error.

Before PRITCHARD and WOODS, Circuit Judges, and McDOWELL, District Judge.

McDOWELL, District Judge. The plaintiff in error was a defendant below, and will be herein referred to as the Oil Company. The defendant in error was the plaintiff below, and will be usually referred to as the plaintiff. In September, 1911, the plaintiff filed in the common pleas court of Fairfield county, S. C., the following complaint:

"State of South Carolina, Fairfield County.

"In the Court of Common Pleas.

"Wm. J. Shelton, Plaintiff, v. Southern Cotton Oil Company, Defendant.

"The plaintiff, complaining of the defendant, alleges:

"1. That the plaintiff is, and at the times hereinafter referred to was, seised in fee and possessed of a tract of land situate in Fairfield county, on the line of the Southern Railway track, at Shelton station, lying on both sides of said Southern Railway track and embracing the lots of land hereinafter described.

"2. Upon information and belief, that the defendant is a corporation duly organized and existing under the laws of some state other than the state of South Carolina, and is doing business as such foreign corporation within the state of South Carolina, its business, amongst other things, being the manufacture of oil and cotton seed meal from cotton seed, and for the conduct of its business it occupies warehouses at a great many points in the state of South Carolina, and has acquired by lease, purchase, or otherwise quite a number of oil mills operating at different points within the state of South Carolina.

"3. That during the year 1897 this plaintiff leased to the Union Oil & Manufacturing Company, a corporation of the state of South Carolina, two lots of land comprised within the tract of land so owned by this plaintiff as aforesaid, of the dimensions of 20 by 30 feet each, both situate on the west side of the track of the Southern Railway at Shelton station, said lease to continue from year to year until terminated by two calendar months' notice in writing, given by this plaintiff to said Union Oil & Manufacturing Company. That said lease continued for a period of three years, when the said Union Oil & Manufacturing Company, or its property, rights, and franchises, was in some manner absorbed or acquired by the Charleston Cotton Oil Mill, a corporation of the state of South Carolina, as this plaintiff is informed and believes. Whereupon the 18th day of September, 1900, this plaintiff leased the said lots of land to the said Charleston Cotton Oil Mill for the period of three years for the sum of $60 paid in advance.

"4. That thereafter the defendant, the Southern Cotton Oil Company, having in some manner absorbed or acquired the property rights and interests of the Charleston Oil Mill, as this plaintiff is informed and believes, took possession of the said premises and occupied the same under the terms of the said lease until the expiration of said three years, to wit, the 18th day of September, 1903.

"5. That at the expiration of the said lease in September, 1903, the said Southern Cotton Oil Company applied to this plaintiff to lease to it four lots lying alongside of the Southern Railway at Shelton station, two of the said lots being the two which had previously been leased to the Charleston Cotton Oil Mill, and the other two lots being of the dimensions of 20 by 30 feet, and this plaintiff agreed to lease the same to said Southern Cotton Oil Company at and for the price of $25 per lot per annum, making a total of $100 per annum for the four lots, said lease to extend for three years, to wit, to September 18, 1906, and said defendant took possession of the said four lots under said agreement and erected thereon two seed houses, in addition to the seed houses which had been previously erected thereon by the Union Oil & Manufacturing Company, or the Charleston Cotton Oil Mill, under the leases above referred to, and since the expiration of said lease the defendant has continued to hold said lots of land.

"6. That said defendant, after getting possession of the said lots of land and erecting buildings thereon, under the terms of said agreement, wrongfully refused to execute the lease, which had been agreed upon, and wrongfully refused to pay the rental of $100 per annum, payable in advance, which was agreed upon for the term of the said lease, but has continued to hold the said lots of land, although the rental value thereof has greatly increased, and since September, 1906, has amounted to at least $200 per annum for the four lots, which the defendant wrongfully refuses to pay to this plaintiff, and wrongfully refuses to surrender the possession of said lots, which are of the

value of $150 each, although demand has been made upon said defendant for the said rent and for the possession of said lots.

"Wherefore plaintiff demands judgment, first, that the defendant, its servants and agents, be enjoined and restrained from further occupying, or in any manner using, any of the said lots of land in violation of the rights of this plaintiff; and, second, that the plaintiff have judgment against the defendant for the sum of $1,300, the rental of such premises, together with interest thereon at 7 per cent. per annum from the dates when the same became due according to the terms of said agreement, together with the costs of this action, and such other and further relief as may be just and equitable.

"Lyles & Lyles, Plaintiff's Attorneys."

The Oil Company removed the cause, on the ground of diversity of citizenship, to the federal court. In the petition for removal it is alleged:

"That the defendant holds the said premises under a lease from Southern Railway Company, which is a corporation organized and existing under the laws of the state of Virginia, and is a citizen and resident thereof, which company claims to be the owner thereof, and the Southern Railway Company, as defendant's landlord, is a proper party to the said suit, and should be made a party thereto by order of court."

Before the petition for removal was filed the Oil Company served on the Southern Railway Company, to be hereafter referred to as the Railway Company, a notice of the suit, in order that the latter, as landlord, might come into the suit and defend it. Thereafter the plaintiff moved to remand the cause to the state court. It distinctly appears that the only ground for this motion was a contention on the part of the plaintiff that the value of the matter in controversy did not exceed $2,000. It does not appear that the plaintiff contended that the value of the premises should not be considered in arriving at the value of the matter in controversy. On the other hand, it seems a fair inference from the ruling made by the trial court that the only dispute was as to the value of the premises. In the complaint this had been stated to be $600; in the petition for removal, at exceeding $1,000. The court found that "the value of the property in dispute and the buildings thereon exceeds the sum of $700." As there was also a demand for $1,300 for the use and occupation of the premises, exclusive of interest, the motion to remand was overruled.

Thereupon the Oil Company answered the complaint. It asserts five defenses. The first is in brief that the premises belong to the Railway Company and that the Oil Company is in possession of part of the premises as the lessee of the Railway Company, and of the remaining part of the premises as sublessee of the Railway Company, and it is alleged that the Oil Company had been paying rent to the Railway Company for the premises since it went into possession in September, 1904. The second defense is based on 20 years of adversary possession by defendant and its predecessors. The third ground is adversary possession of over 10 years. The remaining grounds of defense are alleged as follows:

"For a fourth defense: This defendant alleges that heretofore, to wit, on the 2d day of September, 1905, the plaintiff above named duly commenced an action against the defendant above named for the recovery of the possession of the real property described in the complaint, in the court of common pleas for the county of Fairfield, in the state of South Carolina, and that,

said cause having been removed to the Circuit Court of the United States for the District of South Carolina, the plaintiff took from the said Circuit Court of the United States for the District of South Carolina on the 14th day of January, 1908, an order discontinuing said action, said order requiring the plaintiff to pay the costs of the action, but that such costs have not been paid; that the said action now pending in this court was commenced in the court of common pleas for the county of Fairfield, in the state of South Carolina, by the service of summons and complaint on the 2d day of September, 1911, for the recovery of the possession of the real property described in the complaint, which was the same property described in the action commenced by said plaintiff against the defendant on the 2d day of September, 1911, and that the said second action was not brought within two years from the granting of the order of nonsuit in the first action.

"For a fifth defense: This defendant alleges that the Southern Railway Company claims to be the owner of the premises described in the complaint, and claims to have good right and title thereto, and said Southern Railway Company is a necessary party to this action, and was on the 16th day of September, 1911, served with notice of said action to come in and make such defense as it may have.

"Wherefore defendant prays that an order be made making the Southern Railway Company a party defendant to this action, and that the complaint be dismissed with costs.                           Thomas & Lumpkin,
                    "Attorneys for the Southern Cotton Oil Company.
"Columbia, S. C., January 19, 1911."

This present action was, without objection by the plaintiff so far as appears, docketed on the law side of the trial court. The Railway Company was made a party defendant, appeared, and adopted as its own the answer of the Oil Company. The action thereupon went to trial before a jury. The following is taken from the record:

"The plaintiff offered evidence tending to show title in himself to the lands over and along which the tracks of the Southern Railway Company were constructed and operated, and offered evidence tending to show that in September, 1897, plaintiff leased to Union Oil & Manufacturing Company, a corporation of the state of South Carolina, the premises in question for the period of three years, and that before the expiration of said period the Charleston Cotton Oil Mill, a corporation of the state of South Carolina, in some way acquired all of the property, rights, and franchises of the Union Oil & Manufacturing Company and entered into possession of the premises in question; that in September, 1900, this plaintiff executed to the Charleston Cotton Oil Mill a new lease of the premises for a period of three years, expiring on the 18th day of September, 1903; that before the expiration of said lease the defendant, Southern Cotton Oil Company, in some way acquired the property, rights, and franchises of the Charleston Oil Mill, and by virtue thereof entered into possession of the premises in question; and that just prior to the expiration of said lease so renewed, to wit, some time in September, 1903, the defendant company agreed with the plaintiff for a lease of said premises for a period of three years and for the right to erect additional buildings thereon at a rental of one hundred dollars ($100.00) per annum, to be paid in advance, and that it thereupon commenced the erection of such buildings and continued to hold possession of said premises, but refused upon demand to execute the lease which had been agreed upon.

"The defendant the Southern Cotton Oil Company offered in evidence leases or licenses for the use of the different parts or parcels of land which constitute the property in controversy, all of said leases or licenses being terminable upon thirty days' notice from Southern Railway Company, to wit:

"(a) Agreement between Southern Railway Company and J. G. Wolling and J. G. Wolling, Jr., dated October 20, 1897.

"(b) Agreement between the same parties, dated August 7, 1899, with map attached.

"(c) Agreement between the same parties, dated June 1, 1900, with map attached.

"(d) Agreement between same parties, dated January 7, 1902, with map attached.

"All of the foregoing lease or license agreements cover portions of land in controversy, and the defendant, the Southern Cotton Oil Company, claimed to have entered under and to be holding possession under said Wolling.

"(e) Lease or license agreement between Southern Railway Company, dated September 23, 1904, with map attached, covering the remaining portion of the land in controversy."

The defendants also offered in evidence the following record from the District Court of the United States for the District of South Carolina:

"Record.

"State of South Carolina, County of Fairfield.

"In the Court of Common Pleas.

"William J. Shelton, Plaintiff, v. Southern Railway Company and Southern Cotton Oil Company, Defendants.

"Complaint.

"The plaintiff above named, complaining of the above-named defendants, alleges:

"1. That the defendant Southern Railway Company is a corporation, and at the times hereinafter mentioned was a corporation, duly created and organized under the laws of the state of Virginia, and is and has been since the year 1894 operating the railroad formerly known as the Spartanburg & Union Railroad, which formerly belonged to the Spartanburg & Union Railroad Company, and, as plaintiff is informed and believes, has become successor to all the rights and franchises and liable to all the duties of the said Spartanburg & Union Railroad Company under the charter granted the said Spartanburg & Union Railroad Company by the General Assembly of this state.

"2. That the said Spartanburg & Union Railway Company acquired under its charter unto itself and its successors a right of way through and over a certain tract of land lying along and on both sides of the said railroad at Shelton depot, in the county of Fairfield and state aforesaid, of which said tract of land the plaintiff herein is seized in fee simple, subject to the said right of way; but the plaintiff alleges that the said right of way was acquired by the said Spartanburg & Union Railroad Company over and through the said tract of land for the purpose of the said railroad only, and for so long only as the same should be used for the purpose of said railroad and no longer, and that the defendant Southern Railway Company has no right of way over and through the said tract of land, save such as was acquired by the said defendant as successor to the said Spartanburg & Union Railroad Company.

"3. That the defendant the Southern Cotton Oil Company is a corporation duly created and organized according to law, and as such is engaged in doing business in this state.

"4. That heretofore the plaintiff let to the defendant the Southern Cotton Oil Company a small parcel of the land referred to in paragraph 2, containing one-eighth of an acre, more or less, lying along or near the track of the said railroad at Shelton, which was to be used by the said defendant for the purpose of storing cotton seed in a certain house which had been erected on said land, and when the term of the lease made by the plaintiff to the said defendant had expired and plaintiff proposed to renew the same, the said defendant refused to renew the said lease, alleging that plaintiff had no right to let the said premises, and that it had obtained a lease thereof from the defendant Southern Railway Company.

"5. That the contract of lease from the plaintiff under which the defendant Southern Cotton Oil Company held possession of the said premises expired on the 31st day of December, 1903, since which time the said defendant, with the sanction and connivance of the defendant Southern Railway Company,

has wrongfully held said premises after demand by the plaintiff for the possession thereof, and without the consent of the plaintiff has erected three other houses thereon, which have become by operation of law the property of the plaintiff herein.

"6. That the said lot or parcel of land on which the said houses are located is entirely outside the right of way of the defendant Southern Railway Company, but plaintiff alleges that if the said strip of land should be within the limit of the right of way of the defendant Southern Railway Company that plaintiff is still the owner thereof in fee and entitled to make any proper use thereof not inconsistent with [use thereof by] said defendant Southern Railway Company, [which] could not have any right or authority to let or lease the same to another for other than railroad purposes.

"7. That as plaintiff is informed and believes the defendant Southern Railway Company has undertaken to authorize the defendant Southern Cotton Oil Company to occupy and hold possession of the said premises and the houses erected thereon, although the said Southern Railway Company well knew that the plaintiff is the owner thereof and seised in fee simple, and the plaintiff alleges that the act of the defendant Southern Railway Company in attempting to hold the defendant Southern Cotton Oil Company in possession of said premises, knowing of plaintiff's title thereto, is a willful, wanton, and high-handed denial of and invasion of the plaintiff's rights, to his damage in the sum of one thousand ($1,000.00) dollars.

"8. That the reasonable rental value of the said premises is $120 per annum.

"9. That the plaintiff is the owner of a Fairfield scales located on the said premises, referred to in paragraph No. 2 of this complaint, which is wrongfully withheld by the defendant and used by the defendant Southern Cotton Oil Company in weighing cotton seed without the consent of the plaintiff.

"Wherefore plaintiff demands:

"First. That he be adjudged the owner in fee of the premises described in paragraph 4 and for the recovery of the possession thereof.

"Second. That the defendant Southern Railway Company, its agents and servants, be forever enjoined from using or permitting or granting the right to others to use the aforesaid right of way over plaintiff's lands for any other purpose than railroad purposes, in violation of the plaintiff's right as owner in fee of said land.

"Third. That the plaintiff have judgment against the defendants for the sum of $120 per annum, the value of the use and occupation of the said land.

"Fourth. That plaintiff have judgment against the defendants for the sum of $1,000 damage sustained by him as alleged in paragraph No. 6 in this complaint.

"Fifth. That the plaintiff have judgment for the costs of this action and for such other and further relief as may be just.

"Ragsdale & Dixon, Plff's Attys."

The record of the action of 1905 also contained the answer of the Oil Company (which asserted title in the Railway Company and also relied upon both 20 years and 10 years of adversary possession), and an order granting the motion of the plaintiff for a nonsuit, made January 14, 1908. There was also offered and admitted without objection a certificate by the clerk that the costs of the action of 1905 had not, up to September 11, 1911, been paid.

At the close of the evidence on the trial of the present action the Oil Company moved the court to direct a verdict in its favor on the ground that this was a second action for the recovery of real property, instituted more than two years after nonsuit taken in a former action to recover the same property. This motion was overruled and exception was duly taken. Thereupon, on the motion of the Railway Company, the court dismissed the action "in so far as it affects the rights of"

the Railway Company. To this the Oil Company also excepted. The court then charged the jury, saying in part:

"When you find your verdict, you will find in these words: If you find for the defendant you simply say, 'We find for the defendant.' If you find for the plaintiff, Shelton, you will say, 'We find for the plaintiff the property in dispute.' If, in addition to that, you find that there had been no rentable value to it, nor any damages to which he has been subjected, you will stop there. If you find, however, that there has been rentable value for use and occupation (you have heard the testimony on that point), then you will add, 'and so many dollars damages,' not exceeding the sum of $1,300."

The verdict was:

"We find for the plaintiff the property in dispute."

The Oil Company then moved for a new trial, and this motion was overruled. The order of the court then made will be set out later. The judgment was that the plaintiff recover of the defendant the Southern Cotton Oil Company the property in dispute and its costs.

In 2 Code of Civil Procedure 1912, § 123, subd. 2, is the following statute:

"Plaintiff Limited to Two Actions for Recovery of Real Property.—The plaintiff in all actions for recovery of real property or the recovery of the possession thereof, is hereby limited to two actions for the same, and no more: Provided, that the costs of the first action be first paid, and the second action be brought within two years from the rendition of the verdict or judgment in the first action, or from the granting of a nonsuit or discontinuance therein."

The first assignment of error is that the trial court erred in overruling the motion of the Oil Company for a directed verdict in its favor. The contentions of the plaintiff may be conveniently stated in the following order:

(1) The present action is not one to recover possession of real property, but is a mere demand for double rent. In the brief for plaintiff it is said:

"The allegation of demand for possession [in the present complaint] was for the purpose of affecting the amount of the rental and not for making out a possessory action." 1 Code 1912, § 3497.

(2) There is no evidence that the premises involved in the first action are the same as the premises involved in the present action.

(3) The first action was not one to recover possession of real estate.

(4) The present action asserts only a right to equitable relief.

(5) Even if both actions were to recover possession of real property, the trial court was right in holding that the differences between the two actions prevented the operation of the statute.

1. The first contention of the plaintiff may be disposed of rather briefly. The section of the Code referred to requires a demand of possession in writing as a condition precedent to the recovery of double the rental value of the premises. There is no allegation in the present complaint that demand in writing had been made, and there is no prayer for double the rental value of the premises. We are unable therefore to read the complaint as is now suggested.

[1] 2. The contention that there is no evidence of identity of the premises involved in the actions requires some discussion. On the trial below the Oil Company introduced in evidence, without objection, the record of the former action. If the plaintiff at that time was contending that there was want of identity of the premises involved this failure to object and to require evidence of identity is inexplicable. But if the plaintiff then conceded the identity of the premises, the course taken was the one to be expected. The order made by the trial court on the Oil Company's motion for a new trial reads as follows:

"The defendants have also moved for a new trial, mainly upon the ground that the court should have held that the present action, being an action for the recovery of the possession of real property, was brought more than two years after the discontinuance of the previous action, which was also an action for the recovery of real property; the property in dispute in the former action being the same premises as those sought to be recovered in the present action, and the costs in which previous action had not been paid.

"Upon a comparison of the complaint in the original action, which was discontinued, with that in the present action, it would appear that there are some slight differences. The former action was brought against two defendants, the Southern Railway Company and the Southern Cotton Oil Company, and was framed, so to say, somewhat in a double aspect, as asking under one aspect for the recovery of the possession of the property on the ground that the plaintiff was absolutely entitled to it, and in the other aspect for an injunction to prevent its further use by the defendants for the purposes for which it was being used as not being compatible with the easement upon the property possessed by the railroad company. In other words, in one aspect the former action treated the case as if the railroad company had properly acquired an easement for a right of way only over the premises, and by virtue of such easement had no right to rent it out to others to use for a storage of seed, or for cotton seed house, and should be enjoined from so doing. The present action is brought against a single defendant, the Southern Cotton Oil Company, and can only be construed, upon reading the facts alleged in the complaint, and giving them any sort of logical construction, and ignoring the prayer of the complaint, as an action for the recovery of real property. Under the language of the decision in Carr v. Monzon, 93 S. C. page 161, 76 S. E. 201, Ann. Cas. 1914C, 731, where a party plaintiff is to be debarred from the second action to recover real estate, unless brought within the time specified in the statute, the two actions are to be construed strictly as being both for recovery of the possession of the same piece of real estate, and for no other purpose. Giving the benefit of any doubtful construction to the plaintiff in this case as to the effect and meaning of the complaint in the first action which was discontinued, in the opinion of the court there were different parties to the two actions. They were not brought for exactly the same purposes; that is, the first action covered other purposes than are included within the scope of the second, and therefore the bar of the statute would not in this case apply.

"The motion for a new trial on behalf of the defendant is accordingly overruled."

If the identity of the premises involved in the two actions had not been conceded by counsel for plaintiff, if the case had not been tried on the theory that there was such identity, we cannot believe that the court would have failed to mention this most obvious ground for the conclusion reached. But we are not left to inference on this point.

On the oral argument here counsel for the Oil Company moved for certiorari to bring up the stenographer's transcript. In so doing it was stated by him that plaintiff's contention of nonidentity of premises had been made for the first time in the brief filed in this court. This

assertion was not denied. On the other hand, the contention of counsel for plaintiff was that he could thus shift his position as it was done in *support of the judgment below*. We have found no authority sustaining such contention. On the other hand, we read the authorities as holding that it is not allowable for any party, who has taken one position on a question of fact on the trial below, to take an inconsistent position in the appellate court. In Brown v. Gurney, 201 U. S. 184, 190, 26 Sup. Ct. 509, 511 (50 L. Ed. 717) it is said:

"But the Supreme Court applied the rule that where the existence of certain facts is assumed in the trial court and the trial proceeds, without objection, on that assumption, and the case is decided in reliance thereon, *neither party* will be heard in the court of review to question there, for the first time, the existence of the facts, and especially not where the alleged omissions might have been supplied if called to the attention of the trial court, and properly applied it, for the identity of the ground in controversy and the validity of the original Kohnyo location were conceded by both parties; and, indeed, counsel really does not deny them as matters of fact, but simply objects that the stipulation did not include them."

In Baker v. Kaiser, 126 Fed. 317, 319, 61 C. C. A. 303, 305, it is said:

"* * * A theory of a case or an assumption of fact adopted by a trial court with the acquiescence of the parties will be followed by an appellate court to which the cause is taken. * * * Appellate courts are especially careful to prevent injustice from resulting from the *affirmance of a judgment* upon a ground not presented to the trial court, and which might have been overthrown by additional evidence, had attention been directed to it."

In 2 Standard Procedure, 244, 245, it is said:

"Consistency of position is a fundamental requisite in appellate proceedings. Parties will not be permitted to take in the appellate court a course at variance with, or inconsistent with, the course followed by them below. Where a case is heard or tried in the lower court upon a certain theory, another and different theory cannot be presented upon appeal."

See, also, 16 Cyc. 796; 11 Am. & Eng. Ency. (2d Ed.) 446; Powell, Appellate Proc. §§ 102, 115; Bigelow, Estoppel (5th Ed.) 717 et seq.; 2 Herman, Estoppel, p. 951; Menderback v. Hopkins, 8 Johns. (N. Y.) 437; Newell v. Meyendorff, 9 Mont. 254, 23 Pac. 333, 8 L. R. A. 440, 18 Am. St. Rep. 738, 742; Railroad Co. v. McCarthy, 96 U. S. 258, 267, 24 L. Ed. 693; Lesser Co. v. Railroad Co., 114 Fed. 133, 140, 52 C. C. A. 95; Bensieck v. Cook, 110 Mo. 173, 19 S. W. 642, 33 Am. St. Rep. 422, 426; Norfolk Co. v. Norfolk, 115 Va. 169, 179, 78 S. E. 545.

While in the great majority of the reported cases it was a plaintiff in error who sought to take an inconsistent position in an effort to reverse the judgment, there are two sufficient reasons for holding that the rule above stated applies to a case where a defendant in error seeks to sustain a judgment by a change of position as to some fact. To permit such change in position is to permit an injustice to the plaintiff in error. In the case at bar the plaintiff in error was, by the silence of the plaintiff, relieved of the duty of introducing evidence of identity of premises at the time when it should have been ready to do so. He who was silent when he should have spoken cannot subsequently be heard to speak.

Again: The jurisdiction of this court on writ of error is to *re*-examine the rulings on questions of law made by the trial court. Unless the state of facts accepted by the trial court be accepted here, this court could not review or re-examine the rulings made below. The trial court has never ruled on the case now sought to be presented by the defendant in error. We overrule the motion for certiorari and will consider the case only on the theory that the premises involved in both actions are identical.

[2, 3] 3. Let us now consider the contention that the first action was not one to recover possession of real property within the meaning of the statute. Under the South Carolina Code of Civil Procedure (section 218) a plaintiff may unite several causes of action, legal or equitable, or both, if they all arise out of the same transaction, or transactions connected with the same subject of action. The plaintiff had a legal cause of action against the Oil Company, in that the latter was alleged to be an overstaying tenant of the plaintiff, who refused to surrender possession. The plaintiff also had or supposed he had an equitable cause of action in that the Oil Company had attorned to the Railroad Company, alleged to be making through its tenant, the Oil Company, a use of plaintiff's land which it was not authorized to make. We deem it unnecessary to express an opinion as to the existence of a right to equitable relief under the complaint of 1905. We shall assume its existence in order to present the case as strongly as possible for the plaintiff. These causes of action were properly joined under the section of the Code above mentioned.

[4] And we should say here that we find no cause for refusing to read and consider the prayers of the complaint in order to ascertain the purpose of the pleader. For some purposes the prayer of a complaint may be disregarded, but not where there is a contention made by the complainant as to the character of the action presented by his own complaint. The prayers of this complaint are most significant. The first is that the plaintiff "be adjudged the owner in fee of the premises * * * and for the recovery of the possession thereof." Had the plaintiff been content to present only his equitable, or supposed equitable, cause of action, there would have been less difficulty in holding that the action was not one to recover possession of real property. But he saw fit, not only to present his legal cause of action, but to make it the primary and chief feature of his complaint. As drawn, the pleading presents as the fundamental cause of complaint the unlawful detention of the possession of the premises, and the most important purpose on the part of the pleader was to recover possession.

We regard as controlling the ruling in Tompkins v. Railroad Co., 30 S. C. 479, 9 S. E. 521, to the effect that a complaint, which presents a right to an injunction to prevent a railroad company from appropriating land which it is not authorized to take, does not institute an action to recover real property or the possession thereof within the meaning of the statute. But we are unable to perceive that plaintiff's action of 1905 falls under this ruling. In the first action mentioned in the opinion in the Tompkins Case a landowner presented

an equitable cause of action and prayed for none but the relief obtainable in a court of equity. In essence the case was one in which a landowner sought by injunction to prevent a railroad company from unlawfully appropriating his land, and incidentally sued for damages. In the present plaintiff's complaint of 1905 he saw fit to allege that the Oil Company obtained possession as his own tenant and was in the untenable position of an overstaying tenant who had illegally attorned to another. While it was also alleged, in order to set up a right to injunctive relief, that it was a railroad company to which the Oil Company had attorned, still it was the former allegation which indelibly stamped the case as being chiefly and primarily one to recover possession of the premises. It should here be said that if the complaint of 1905 did not present a right to injunctive relief the complaint so clearly instituted an action to recover possession of real property, that the question needs no further discussion.

But, treated as a complaint presenting both a legal and an equitable cause of action, we cannot escape the conclusion that the action of 1905 was, within the meaning of the statute, one to recover possession of real property. Its paramount purpose both in form and in essence was to have the right of possession adjudicated. We are fully aware that the statute is in derogation of a common-law right, and that it operates only when both the first and second actions are in essence strictly actions to recover real property or the possession thereof. We hold, as we must under the South Carolina decisions construing this statute (and we use here the phraseology of the common-law jurisdictions in order to express our meaning more clearly), that a common-law action of trespass q. c. t., a suit for partition, although the plaintiff's title be denied, or a bill in equity to foreclose a mortgage, or to enjoin a defendant having the power of eminent domain from appropriating land which it is not authorized to take, are all actions which do not fall within the meaning of this statute.

We are further of opinion that the mere similarity in practical result between some of the last above named actions and an action which is strictly one to recover real property or the possession thereof does not afford reason for disregarding the intent of the statute. In South Carolina there is but one form of action. Code Civ. Proc. § 114. Consequently there is no technical form of action for the recovery of real property or for the recovery of the possession of real property. The essential nature of the complaint, in view of the facts alleged and the relief prayed, must determine the nature of the actions to which this statute applies. Mere joinder of equitable rights, and a fortiori of merely supposed equitable rights, with legal rights, cannot as we believe, be sufficient to prevent the application of the statute. We have found no authority for the supposition that either action must be solely to recover real property or the possession thereof. Nor do we perceive any good reason for so holding. When the statute in practically its present form was first enacted, in 1744, there could be no such thing as a joinder of a legal and an equitable cause of action. When the code pleading was adopted in 1870 this ancient statute was not repealed or amended. If the Legislature had intended that the statute of 1744 should not apply to actions to recover real property

or the possession thereof, when presented in conjunction with some equitable cause of action, it would seem that this intent would have been expressed. And even if not expressed in 1870, it would seem that during the 40 years intervening between the adoption of the code system of pleading and the institution of the present action, some expression of this intent would have found its way into the statute law.

We are therefore brought to the conclusion that the action of 1905 was an action to recover the possession of real property within the meaning of the statute.

4. We are now brought to a further consideration of the nature of the present action. In the brief for the plaintiff it is said (page 14):

"Upon the same principle the court should have construed the present action strictly as an equitable action based upon the equitable rights alleged in the complaint in favor of the plaintiff against the defendant, which unquestionably could be maintained even if the former action was for the recovery of the land."

In holding that no such right is shown, we do not need to rely upon the federal doctrine that a plaintiff out of possession suing a defendant in possession of real estate has no standing in equity under the facts asserted in this complaint. Whitehead v. Shattuck, 138 U. S. 146, 11 Sup. Ct. 276, 34 L. Ed. 873; Erhardt v. Boaro, 113 U. S. 537, 5 Sup. Ct. 560, 28 L. Ed. 1113; Black v. Jackson, 177 U. S. 349, 363, 20 Sup. Ct. 648, 44 L. Ed. 801; Buchanan Co. v. Adkins, 175 Fed. 692, 99 C. C. A. 246. We have failed to find any authority authorizing a belief that there is in the state courts of South Carolina a right to equitable relief under the circumstances here. As the sole defendant has not the power of condemnation, we see no room for applying the doctrine of Bird v. Railroad Co., 8 Rich. Eq. 46, 64 Am. Dec. 739; Tompkins v. Railroad Co., supra, 30 S. C. 479, 9 S. E. 521; Ragsdale v. Railroad Co., 60 S. C. 381, 38 S. E. 609; 1 High, Inj. (4th Ed.) § 622; 2 High, Inj. (2d Ed.) §§ 622, 625, 629; 2 Lewis, Em. Dom. (3d Ed.) §§ 901, 902, 904. We have therefore a pleading which, treated as a bill in equity, is fatally wanting in equity. Had this action, on removal, been docketed on the equity side of the federal court, a motion to dismiss for want of equity would necessarily have prevailed.

[5] We need not concern ourselves with the propriety of treating such a complaint, over the objection of the complainant, as presenting a legal cause of action. The complaint here alleged that the Oil Company "wrongfully refuses to surrender the possession of said lots, * * * although demand has been made upon said defendant * * * for the possession of said lots." On removal of the cause it was apparently placed on the law docket. The plaintiff made no motion to have the cause docketed on the equity side. He could have had his supposed right to equitable relief tested by so doing. On the other hand, without objection, he permitted the cause to remain on the law side, and went into a trial by a jury. The evidence offered by the plaintiff bore directly on his right to the possession of the premises, and on nothing else. Having submitted his complaint, treated as one setting up a legal cause of action, to the decision of a jury, he must be held to have waived his right to object on this point.

And we have no difficulty in arriving at the conclusion that this course of action was not the result of ignorance or of mistake. The learned counsel for plaintiff must have known that the chances of maintaining the complaint in the federal court as a bill in equity were, to say the least, exceedingly slight. They also presumably hoped to escape the bar of the statute in question in exactly the manner that it was escaped in the trial court. It is true that the complaint, treated as a declaration, might have been considered as a mere assumpsit for money for the use and occupation of real estate. But this method of escaping the bar of the statute was not only not accepted by plaintiff, but he waived the right to have the complaint so treated. He made no motion for leave to strike out the above-quoted allegation, and his every word and act as shown by the record indicates a purposeful intent to submit to the jury the question of his right to recover the possession of the premises. The belief of counsel for plaintiff that the differences between the action of 1905 and the present action prevented the statute from being applicable is, we must believe, the explanation of this course of action. The conclusion that the plaintiff never for a moment intended his complaint to be treated as a declaration for money only is fortified by the fact that counsel for plaintiff had at the outset moved to remand the cause to the state court for want of sufficient value in controversy. If the complaint were treated as a mere declaration for $1,300 for the use of real estate or for rents, the want of jurisdiction of the trial court was too apparent to be supposed to have escaped the attention of the experienced and astute counsel representing the plaintiff. Moreover, with the above-quoted allegation left in the complaint, it was properly worded in order to recover possession and rents in arrear, and was inappropriately worded as a mere demand for rents in arrear or for compensation for the use and occupation of real estate. It is also a fact that the answer presented clearly the issue of the right of possession. By going to trial on such an issue the plaintiff (although his original intention was different) must assuredly be held to have waived the right to now have his complaint construed otherwise than as a declaration for the recovery of possession of the premises and for compensation for its unlawful use and occupation by the oil company.

[6] Having reached the conclusion that the present action must be treated as one to recover possession of real property, we must now consider the reasons which led the learned trial court, at the instance of the plaintiff, to rule that the present action is not barred by the statute in question. These reasons are want of identity of parties, and that the first action covered purposes other than are included within the scope of the present action. In order that the statute may apply some identities are necessary. There must be substantial identity of parties to the two actions, identity of premises involved, and identity of cause of action. The only difference in parties consists in the fact that the Railway Company, the landlord of the Oil Company, was made a party defendant on the face of the first complaint and is not mentioned in the present complaint.

It is unnecessary that we base our conclusion on the fact that the Railway Company had been brought into the present action as a de-

fendant, and was still before the court as such when the Oil Company's motion for a directed verdict was overruled, or on the privity between landlord and tenant. In reason and by authority the absence of the landlord, had it existed, from the second action, does not destroy sufficient identity of parties. The fact that the plaintiff in both actions is the same person, and that the Oil Company is a defendant in both actions is sufficient. We so say because of the analogy between the present situation and a case where a prior judgment is relied upon as an estoppel. The analogy exists because by the statute the same effect is given to an order of nonsuit rendered in the first action more than two years before the institution of the second that is given by general law to a final judgment on the merits rendered in the first action. In 23 Cyc. 1112, it is said:

"But where a former judgment is pleaded in bar, it is no objection to its operation as an estoppel that the former action included some parties who are not joined in the present suit or vice versa, provided the judgment was rendered on the merits, and not on an objection as to parties, and provided the cause of action in the two suits is the same, and the party against whom the estoppel is set up was actually a party to the former litigation."

In 1 Herman, Estoppel, § 94, it is said:

"To make a judgment, pleaded in bar, a technical bar, it must appear to have been between the same or substantially the same parties. A nominal, but not substantial, difference in parties does not effect the estoppel."

See, also, Thompson v. Roberts, 24 How. 233, 241, 16 L. Ed. 648; Green v. Bogue, 158 U. S. 478, 503, 15 Sup. Ct. 975, 39 L. Ed. 1061.

As has been shown, we must treat the identity of the premises in controversy in the two actions as being established. We are unable to perceive that there is any difference between the cause of action in the first complaint and that in the second. The gist of both complaints is the same. An alleged illegal detainer of the possession of the premises by the plaintiff's tenant, the Oil Company, is the gist of the complaint in both actions. In both the Oil Company is alleged to have obtained possession by virtue of leases made by the plaintiff. In both it is alleged that the Oil Company is an overstaying tenant. The mere fact that the complaint of 1905 contains an allegation that the Oil Company has committed the grievance with the sanction and connivance of the Railway Company, which is not made in the present complaint, would not prevent the application of the strict doctrine of estoppel by judgment.

Having, then, substantial identity of parties, identity of premises, and identity of causes of action, we doubt if any difference of purpose on complainant's part in bringing the two actions could possibly avail to prevent the operation of the statute. However, it is unnecessary to so decide. We are unable to see that there is any difference of purpose, such as could possibly be of moment here. We believe that we have satisfactorily shown that in the first complaint, even assuming that it set up an equitable right, the chief and primary purpose was to recover possession of certain premises. Treated as the plaintiff acquiesced in having it treated, the chief and primary purpose in the second complaint was to recover the possession of the

same premises. We are therefore unable to find any sufficient reason for holding that the statute did not apply. As the present action was barred, the motion of the Oil Company for a directed verdict should have been granted.

It is unnecessary that we consider the remaining assignments of error. We are of opinion to reverse, at the cost of defendant in error, and to remand for such further action as may be proper.

Reversed.

PRITCHARD, Circuit Judge, dissents.