**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

In Re: FLYING A COMMUNICATIONS,
INC., A CORPORATION & GENERAL
PARTNER OF FLYING A
COMMUNICATIONS LIMITED
PARTNERSHIP, d/b/a WFWV, Inc.,
d/b/a WYVN TV, d/b/a WYVN TV
60,
Debtor.

No. 97-1359

GARY A. ROSEN, Trustee,
Trustee-Appellant,

v.

PATRICK M. CLAWSON,
Appellee.

Appeal from the United States District Court
for the Northern District of West Virginia, at Martinsburg.
W. Craig Broadwater, District Judge.
(CA-96-33-3, BK-92-31171)

Argued: December 1, 1997

Decided: February 6, 1998

Before WILKINSON, Chief Judge, JONES,
United States District Judge for the Western District of Virginia,
sitting by designation, and MICHAEL,
Senior United States District Judge for the
Western District of Virginia, sitting by designation.

_____

Affirmed by unpublished opinion. Judge Jones wrote the opinion, in which Chief Judge Wilkinson and Senior Judge Michael joined.

_____

**COUNSEL**

**ARGUED:** Roger Schlossberg, SCHLOSSBERG & ASSOCIATES, Hagerstown, Maryland, for Appellant. George Robert Borsari, Jr., BORSARI & PAXSON, Washington, D.C., for Appellee. **ON BRIEF:** Brett R. Wilson, SCHLOSSBERG & ASSOCIATES, Hagerstown, Maryland, for Appellant. Anne Thomas Paxson, BORSARI & PAXSON, Washington, D.C., for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

JONES, District Judge:

Gary A. Rosen, a bankruptcy trustee, appeals the district court's decision affirming the bankruptcy court's award of compensation to Patrick M. Clawson, a broker employed by Rosen. Rosen asserts that: (1) the district court should not have applied a clearly erroneous standard of review; and (2) the bankruptcy and district courts erred in interpreting the terms of Clawson's employment contract. Holding that the bankruptcy court properly construed the contract, we affirm.

I

On October 9, 1992, Flying A Communications, Inc. ("Flying A"), filed for protection under Chapter 11 of the Bankruptcy Code. On June 22, 1993, the case was converted to Chapter 7 and David A. Savasten was appointed trustee. Flying A had been engaged in the operation of WYVN-TV ("WYVN"), a television station located in Martinsburg, West Virginia. Flying A's primary assets consisted of

the land and improvements upon which WYVN was located, the broadcasting equipment utilized by the station, and the Federal Communications Commission ("FCC") permit for the operation of WYVN. The land was encumbered by a lien of F&M Bank ("F&M") and the broadcasting equipment was encumbered by a lien of Dana Commercial Credit Corporation ("Dana").

On September 29, 1993, the bankruptcy court granted Dana and F&M relief from the automatic stay imposed by the Bankruptcy Code,[1] permitting them to enforce their security interests, and effectively removing both the land and equipment from the bankruptcy estate. Savasten was thereafter replaced by Rosen as bankruptcy trustee. Rosen, recognizing that the sale of WYVN as a unit would likely command a higher sale price, sought to have WYVN sold together with all of its constituent parts and in conjunction with F&M and Dana. Accordingly, Rosen sought and was granted permission by the bankruptcy court to employ Clawson as a media broker [2] for the sale of the station and its assets as a package. Clawson's employment contract, written by him, provided that he would receive a sale commission based upon the "venture transaction value," in accord with the following schedule:

> 5% of the first $1,000,000 or portion thereof, with a minimum fee of $25,000; plus
> 4% of the second $1,000,000 or portion thereof; plus
> 3% of the third $1,000,000 or portion thereof; plus
> 2% of the fourth $1,000,000 or portion thereof; plus
> 1% of the fifth and each additional $1,000,000 or portion thereof.

The bankruptcy court authorized the employment of Clawson "with compensation payable only in the event of the settlement of a sale procured by said broker or co-broker, and only from proceeds of such sale."

_____

[1] 11 U.S.C.A. § 362 (West 1993).

[2] Clawson had sent a proposal to Savasten, the prior trustee, who chose not to employ a broker.

3

Clawson subsequently procured the sale of the combined assets to a third party for the sum of $1,900,000, to be disbursed as follows: $425,000 payable to the trustee; $625,000 payable to F&M; and $850,000 payable to Dana. The sale was conditioned on a release by F&M and Dana of their remaining claims against the debtor's estate. It was approved by the bankruptcy court and closed on October 13, 1995. Thereafter Clawson filed an application for compensation seeking a commission of $86,000, computed on the total sale price of $1,900,000. Rosen objected to the amount of the commission, arguing that Clawson was entitled to a smaller commission computed on the basis of the $425,000 actually received by the bankruptcy estate, and not on the total sale value which included payments to F&M and Dana for the land and equipment used by WYVN.

The bankruptcy court overruled the objection and on March 4, 1996, approved payment of a commission based on the total sale price of $1,900,000. Rosen appealed the award to the district court, arguing that the compensation was neither reasonable nor properly determined in accord with section 330 of the Bankruptcy Code. [3] However, during the appeal process, Rosen reconsidered his position regarding the proper basis for Clawson's commission, and agreed that Clawson was entitled to commission based not only on the $425,000 paid to the estate, but in addition, the value of the claims waived by F&M and Dana.[4]

Holding that the bankruptcy court's finding that Clawson's compensation was reasonable was not clearly erroneous, the district court affirmed. Rosen now argues that the district court failed to apply the proper standard of review and that both the bankruptcy court and the district court improperly interpreted the contract language governing the basis of Clawson's commission.

_____

[3] 11 U.S.C.A. § 330 (West 1993).

[4] Rosen agreed that the sum of the amount paid to the bankruptcy estate and F&M's and Dana's respective claims would result in a commission base of $850,000, producing a $42,500 commission.

II

As a preliminary matter, Clawson contends that this appeal should be dismissed because Rosen presents a different argument here than that presented before the district court. Rosen argued below that the commission was unreasonable; he now argues that the commission violated the terms of Clawson's employment contract. While mindful of the axiom that "[c]onsistency of position is a fundamental requisite in appellate proceedings,"[5] we need not reach this issue because we affirm on the merits.

III

Rosen first contends that because the bankruptcy court's interpretation of the contract language constituted a legal determination, the district court erred in applying a clearly erroneous standard.[6] Assuming, arguendo, that the district court applied the wrong standard of review, that error is immaterial in light of the fact that our review of the bankruptcy court's interpretation of the contract is de novo.[7]

IV

The substance of the parties' dispute is the interpretation of the contract's definition of "venture transaction value." The contract provides that it is:

> the total amount of any and all amounts of money or other consideration paid or conveyed to WYVN or for its benefit or paid or conveyed by prospects in connection with the sale of assets or other business transactions involving WYVN including without limitation, cash; stock; bonds; indentures;

_____

**5** **Southern Cotton Oil Co. v. Shelton**, 220 F. 247, 256 (4th Cir. 1914).
**6** Because a district court sits as an appellate court in bankruptcy, it must apply those well established standards of appellate review which govern review of district court judgments. First Nat'l Bank v. Stanley (In re Stanley), 66 F.3d 664, 667 (4th Cir. 1995). Accordingly, a bankruptcy court's findings of fact may not be set aside unless they are clearly erroneous, but its decisions of law are to be reviewed de novo. Id.
**7** **First Nat'l Bank v. Stanley (In re Stanley)**, 66 F.3d at 667.

5

> debentures . . . the assumption or discharge of liabilities . . . or any combination of the above or other items of consideration or value.

(emphasis added). Rosen originally argued that the definition encompassed only those funds paid or conveyed directly to WYVN, i.e., the $425,000 paid to the bankruptcy estate. However, Rosen ultimately agreed that F&M's and Dana's waiver of their remaining claims also benefitted WYVN and therefore, should be included in the venture transaction value.

Rosen's contention that the funds paid for WYVN's land and equipment should not be included in the venture transaction value is directly at odds with the plain language of the contract. The phrase "the total amount of any and all amounts of money or other consideration paid or conveyed to WYVN or for its benefit" is readily understood to include all funds paid which benefitted WYVN. There is no dispute that the purchase of the land and equipment from F&M and Dana, in conjunction with the FCC permit, directly benefitted the bankruptcy estate by resulting in a higher sale price for the FCC permit -- the bankruptcy estate's only substantial asset -- than could have otherwise been obtained. Rosen admits that the best offer made for the FCC permit alone was only $100,000, less than twenty-five percent of the price for the permit ultimately brokered by Clawson through the sale of WYVN in its entirety. The agreement of the security holders to accept the consideration paid for the equipment and land was critical to Clawson's ability to broker the sale. Accordingly, the bankruptcy court properly concluded that the total sale price was the venture transaction value.

Even were we to find persuasive Rosen's argument that the contract language was ambiguous, we would nevertheless be compelled to reach the same conclusion. The record contains ample evidence that the parties' understanding was that WYVN should be sold as a unit and that Clawson was to be paid on the basis of the total sale price. Rosen's actions themselves reflect his own understanding that the bankruptcy estate stood to benefit from the sale of WYVN as a unit. To his credit, when he took over as trustee, he successfully persuaded the bankruptcy court to permit a package sale of WYVN and he obtained the services of a successful media broker who could

6

arrange for such a transaction. Likewise, F&M's and Dana's waiver of their claims reflects the understanding that Clawson would arrange for a package sale, for which he was to be compensated by the bankruptcy estate.

Rosen's assertion that the bankruptcy court acknowledged that the contract language was ambiguous misstates the record. The bankruptcy court did find some ambiguity regarding Clawson's payment; however, that ambiguity pertained to who should pay Clawson, not how much he should be paid.[8] The court resolved this question of who should pay against the estate and found that the estate had agreed to pay the entirety of the commission. That finding is clearly supported by the evidence.

For the foregoing reasons, we affirm.

AFFIRMED

_____

[8] As the bankruptcy court stated from the bench: "There is no doubt in my mind that Mr. Clawson did a good job and should be compensated. He got us out of a hole, all of us out of a hole, including [F&M and Dana]."

7